RICHARD McGRIFF, ADMINISTRATOR OF THE ESTATE OF RICHARD DAWSON, DECEASED, APPELLANT, vs. WILLIAM G. PORTER, JOHN G. RUAN AND RICHARD G. PORTER, APPELLEES.

1. Where, to secure a loan of money, the borrower executed an instrument of writing authorizing the lender, upon default in repayment of the money borrowed, to enter upon the premises of the borrower, and take and carry away certain slaves specified therein, and sell and dispose of them, and from the produce of the sale to pay himself the money due, and all expenses, returning the overplus, if any: HELD, That such instrument was not a mortgage, but a power.

2. A power is simply collateral, and without interest, or a mere naked power, when to a stranger, authority is given to dispose of an interest, in which he had not before, nor has by the instrument creating the power, any estate whatsoever; but when the power is given to a person who derives, under the instrument creating the power, or otherwise, a present or future interest in the property which is the subject of the power, it is then a power coupled with an interest: HELD, therefore, in the present case, that the power given or created is a mere naked power, unconnected with any interest or estate in the property, the subject of the power; and though founded upon a consideration, and therefore irrevocable by the grantor in his life time, yet that it was revoked by his death before the execution thereof.

3. The act of January 30, 1838, entitled an act to amend an act to regulate the foreclosure of mortgages, (Thomp Dig., 376, ch. 3 § 1,) considered and interpreted to be intended to limit and restrict the operative force of certain classes of conveyances therein mentioned, and not to extend or enlarge the effect of others.

The appellant filed his bill in Franklin Circuit Court,

against the appellees and the Sheriff of Franklin County, as ex-officio administrator of the estate of Archibald R. Ridley, deceased, to foreclose as a mortgage a certain instrument, which is set out at length in the opinion of the Court delivered in this case.

It appears from the record that Archibald B. Ridley, in his life time, executed a note, payable on the first day of January, 1836, to Richard Dawson, since deceased, of whose estate said appellant is administrator, for eleven hundred dollars, and at the same time executed and delivered to said Dawson the instrument of writing which is set up as a mortgage, and claimed to have been intended as a security for said note.

The property mentioned in the instrument of writing remained in the possession of Ridley till his death, and there is no evidence that any effort was made prior to the death of Ridley, to execute the power granted to Dawson by the instrument in question.

To establish the character claimed for this instrument, the appellant examined John J. Edwards, one of the subsubscribing witnesses, who stated that he and Thomas Edwards, the other subscribing witness, arrived at the house of Dawson, and found Dawson and Ridley there alone; that they were informed by Ridley that he had borrowed or wished to borrow money from Dawson, and had made a mortgage to secure its payment, and asked them to witness the execution of the instrument, then already prepared, which they did. Hare, another witness for appellant, says, Ridley, in a conversation with him, told him that he had mortgaged the slaves mentioned in said instrument to Dawson.

The appellees claimed title to the slaves in their possession through one Isaac Brown, and assert that they had no knowledge or notice of any incumbrance, by way of mort-

gage, or otherwise, on said slave. The Court below dismissed the bill of complaint with costs.

*Davis* for Appellant.

*Baltzell* and *A. H. Bush* Appellees.

THOMPSON, J.:

This is a suit for foreclosure of mortgage, which was instituted by the appellant, who was complainant in the Circuit Court, and the decision of the case turns upon the character of the instrument set up in the bill, and a copy of which is exhibited therewith, whether it is a mortgage as is asserted by the complainant, or a mere naked power as contended for by the respondents.

The instrument is in the following terms, viz:

" Alabama, Henry County. To all to whom these pres-" ents may come, greeting: Know ye, that I, A. B. Rid-" ley, for and in consideration of the sum of eleven hun-" dred dollars, forever defend by these presents, and it is " hereby agreed by the parties to these presents, that if I, " the said A. B. Ridley, my executors or any of us, do and " shall well and truly pay, or cause to be paid, unto the " said Richard Dawson, his executors, the sum of eleven " hundred dollars, according to a certain bond bearing " even date herewith, given by me to Richard Dawson, " then these presents, and every thing herein contained, " shall be void; and I, the said A. B. Ridley, for myself, " my heirs, executors, administrators and assigns, do agree " with the said Richard Dawson, his heirs, executors, ad-" ministrators and assigns, that in case default shall be " made in payment of said sum of money, at the time lim-" ited for the payment, then it shall and may be lawful for " the said Richard Dawson, his executors, administrators " and assigns, with any person or persons he or they shall

"think fit, to enter into the dwelling house and premises "of said A. B. Ridley, wherein said negroes may be lodg- "ed, to-wit: Isabella and her two children, Mary and her "two children, and John, a mulatto boy, about fifteen "years old, thence to carry away the said negroes, and "sell and dispose of them for the best price which they can "obtain, and of the money to arise by such sale thereof to "pay and return to him and themselves the said sum of "eleven hundred dollars, and all charges touching the "same, they returning to me, the said A. B. Ridley, my "heirs, executors, administrators or assigns, the overplus, "(if any such shall be,) any thing herein to the contrary "notwithstanding; and until default be made in the afore- "said sum of money at the time fixed for the payment "thereof, I, the said A. B. Ridley, my executors, adminis- "trators and assigns, are to remain in the quiet possession of "the aforesaid, and to the full and free enjoyment of the "same."

This instrument was executed under the hand and seal of the said Archibald B. Ridley, on the 16th January, 1835, and the execution thereof is attested by two witness- es, Messrs. J. J. Edwards and Thomas Edwards. There is no doubt but that the instrument was executed simulta- neously with a bond of eleven hundred dollars made by Ridley to Dawson, and that it was intended to be a secu- rity for the repayment of the money so borrowed, but it is equally clear that, although the said instrument was spo- ken of by the parties thereto at and after its execution, and since by the attesting witnesses, as a mortgage, yet it can- not be regarded as such a security. A mortgage of per- sonalty is a conveyance of the absolute property and inter- est therein, defeasible on the performance of some condi- tion subsequent, such as the payment of money, doing some act by the mortgagor, or the like. By the common

law, possession being regarded as the *indicium* of owner-
ship of personal property, it was required that it should
accompany and follow the mortgage, and on default of the
mortgagor in the performance of the condition mentioned
in the defeasance, the estate, or interest of the mortgagee,
became absolute at law, the mortgagor having nothing left
therein but a right in equity to redeem, if asserted and
claimed within a reasonable time. In this and other States
of the Union, the rule of the common law has been so far
changed as to permit the mortgagor to retain the possession
of the mortgaged property, upon a record of the convey-
ance in mortgage, in which case, upon default by the mort-
gagor, the mortgagee is driven to his suit for foreclosure,
or other appropriate remedy, to obtain satisfaction out of,
or the possession of, the mortgaged property. In the in-
strument under examination, there are no words of trans-
fer or conveyance of the property mentioned, or of any in-
terest therein ; neither does it provide that the creditor
shall have the possession thereof, but on the contrary, it is
expressly stipulated that the possession is to remain with
the owner, the debtor, until, by default in the payment of
the money, the authority and power shall accrue to the
creditor to enter upon the premises of the debtor and take
and carry away, and sell and dispose of, the property, pay
himself the debt due, and all costs, &c., and return the
overplus, if any. The instrument confers simply an author-
ity, unconnected with any right in the property which is
mentioned and specified therein.

It is, however, argued with much ingenuity by the coun-
sel for the appellant, that whatever may be the construc-
tion of this instrument, at and by the rules of the common
law, yet when it is interpreted with reference to the act of
our Legislature of January 30, 1838, amendatory of the act
regulating the foreclosure of mortgages, &c., (Thomp. Dig.
47

376, ch. 3, § 1,) it amounts to a mortgage. The act refer-
red to is in the following terms : "All deeds of convey-
" ance, bills of sale, or other instruments of writing, con-
" veying or selling property, either real, personal or mixed,
" for the purpose, or with the intention of securing the pay-
" ment of money, whether such deed, bill of sale, or other
" instrument, be from the debtor to the creditor, or from
" the debtor to some third person or persons, interested for
" the creditor, shall be deemed and held as mortgages, and
" shall be subject to the same rules of foreclosure, to the
" same regulations and restrictions as now are, or hereafter
" may be prescribed by law, in relation to mortgages."
This act was designed to operate upon and control mort-
gages with power of sale, and deeds of trust to third per-
sons with like powers of sale, which, at the time of the
passing of this statute, were much used in some parts of
the then Territory, and which were considered to operate
oppressively upon the debtor, the provisions of such deeds
of conveyance ordinarily stipulating that after default made
by the debtor in the payment of the debt, the mortgagee
in the one case, and the trustee, on the requisition of the
creditor, in the other, should proceed, upon some short no-
tice, to sell the property conveyed and hypothecated for
cash, and to apply the proceeds to the satisfaction of the
debt. But independently of this consideration, the partic-
ular mischief which this statute was intended to remedy,
and considering the instrument in question as if made in
Florida, and with reference to its laws, it seems very clear
that it cannot and does not receive any aid from this stat-
ute. The act mentions " deeds of conveyance and bills of
" sale," and although it uses the terms, or " other instru-
" ments of writing," yet these terms, upon a familiar rule
of interpretation, must be taken to mean instruments *ejus-
dem generis*, of a kindred character to those which are spe-

cifically designated, and this is fully sustained by the description which is contained in the statute, which shows that it was designed to operate on those instruments alone which have the effect of " conveying or selling property, " real, personal or mixed, for the purpose or with the in-" tention of securing the payment of money." The instrument of writing which is attempted to be set up in this case, as a mortgage, neither conveys nor sells the property mentioned and specified therein, for the want of any operative words of conveyance or transfer, any form of expression, which, without wresting the language employed from its fair and legitimate import, can be construed to evince any design whatever, on the part of Ridley, to divest himself of the legal title and vest in Dawson, or any other person. Hence the instrument is not within the act, which, from its whole scope, is clearly designed to limit, restrict and control the operation of certain classes of conveyances described therein, and not to enlarge or extend the operative force and effect of others.

As before remarked, the instrument before the Court creates a power only, not coupled or connected with any interest in the property. A power is simply collateral and without interest, or a naked power, when, to a mere stranger, authority is given to dispose of an interest, in which he had not before, nor has by the instrument creating the power, any estate whatsoever; but when the power is given to a person who derives, under the instrument creating the power, or otherwise, a present or future interest in the property, the subject on which the power is to act, it is then a power coupled with an interest. Co. 1st Inst., 342, l. n. 1; Bergen vs. Bennett, 1 Caine's Cas. in Er., 1. It is true that Dawson had an interest in the money which was to be produced by the power, and which was to be applied to the discharge of the debt due him by Ridley, the donor

of the power, but as is justly remarked by C. J. Marshall, in the case of Hunt vs. Rousmaniere, (8 Wheat. R., 174, 5 Peters' Cond. R., 405,) in such a case the power and the interest can never be united. The power to produce the interest must be exercised, and by its exercise is extinguished. The power ceases when the interest commences, and therefore cannot, with accuracy, be said to be coupled with it. This power, however, forming part of the contract of loan between Dawson and Ridley, and being the security provided for its re-payment, is founded upon a valuable consideration; and although there is no stipulation that it shall be irrevocable by the grantor, or constituent, yet it is deemed in legal view to be beyond his control, and to be irrevocable by him in his life time. But Ridley, the grantor, having died, the question here arises as to the effect which that event had upon the power so created.

That a mere naked power, whether founded upon a valuable consideration or not, is revoked by the death of the party creating it, is not only well settled upon authority, but it results as a necessary consequence from the nature and character of such power. Thus in the case at bar, an authority is given to Dawson to dispose of an interest and property in the slaves specified, which he had not before, and which has not been conferred upon him by the instrument which gives or creates the power. Apply now the test. If the power is executed by the donee or grantee thereof, it must necessarily be executed in the name of the donor or grantor, who alone possesses the title and estate in the property, he not having parted with it by any transfer or conveyance thereof, and he being dead, it would be simply an absurdity to execute a sale and conveyance in the name, and as the act of a dead man. The death of the party, therefore, in such case, operates as a revocation, be-

cause, by the happening of this event, the power has become impossible to be executed.

The only exception to this is the case of a naked power or authority given by one by his last will to his executors to sell his estate for the payment of debts, &c., in which case the authority is expressly given, to be executed after his death, and the act may be done in the name of the executors, and not in the name of the testator. The case of Hunt vs. Rousmaniere's administrator, before cited, is precisely analagous. In that case a power of attorney was executed by Rousmaniere to secure a loan of money, which authorized Hunt, the lender, to sell the vessels mentioned therein, on default in the payment of the debt, and pay himself the amount due, &c., and Rousmaniere having died before the execution of the power, it was held to have been revoked by his death.

The case of Knapp vs. Alvord, cited from 10 Paige R., 205, by the counsel for appellant, is readily distinguished from the case before cited, as well as the case at bar. A person who was indebted, upon going abroad *put an agent in possession of his stock in trade*, and gave him a written power to sell, &c., any part of the goods, &c., and apply them to the payment of the debts, and to the security or payment of any notes for which such agent might become responsible on his account. The principal having died, it was held that the power of sale given to the agent was a power coupled with an interest, and that he had power to sell and retain for the amount of his advances, notwithstanding the death of the principal.

The Court has not had access to the report of the case, so as to ascertain the grounds of the decision, but presume it must have been for the reason that the property, which was personalty, being delivered to the agent simultaneously with the creation of the power, was a sufficient transfer

thereof to create an interest in connection with the power. Such would have been the effect in the present case, if the slaves had been delivered by Ridley to Dawson at the time of the execution of the instrument; the latter would have acquired, by such tradition of the property, an interest commensurate with the power which was created, and in the execution thereof he would have acted in his own name.

Upon these considerations, it is clear that the prayer of the bill cannot be sustained. The instrument set up is not a mortgage, but a mere power, not coupled or connected with any interest in the property which is the subject thereof; and having arrived at this conclusion, it becomes necessary to examine and pass upon the position assumed by appellant's counsel, that it appearing from the evidence a mortgage was intended by the parties, but which failed through the ignorance of the draftsman, the Court should not affirm the decree of the Court below, but should modify the same by granting leave to appellant to amend his bill so as to obtain a reformation of the instrument.

The principle is undeniable that where an instrument of writing which proposes, or is intended to carry into effect a previous agreement between the parties, but which, by some mistake in its preparation, either as to fact or law, does not fulfil, or which violates, the manifest intention of the parties to the agreement, equity will correct the error so as to make the instrument conform to the agreement, such imperfect execution being considered as no execution at all. Without adverting to the frame and structure of the appellant's bill of complaint, and considering whether he is justly entitled, in view thereof, to claim the favorable interpretation of the Court, as is contended for, the Court cannot satisfactorily ascertain from the evidence in this record, that the instrument which was executed does not ful-

fil, or that it violates the intention of the parties thereto. There is very little testimony in relation to the execution of the instrument, and none as to the previous agreement between the parties, or the negotiations which led to the execution of the deed, save what may be derived from the brief statement of John J. Edwards, one of the subscribing witnesses. He states, that having arrived at the house of Dawson, in company with Thomas Edwards, the other subscribing witness, they found Dawson and Ridley there, and alone; that they were simply informed by the latter, that he had borrowed, or wished to borrow, money from the former, and had made a mortgage upon negroes to secure its payment, and requested them to attest the execution of the instrument, then already prepared, which was done. Another witness, (Hare,) detailing a conversation with Ridley, says he told him he had mortgaged said slaves to Dawson. No witness speaks of the negotiation between the parties, as to the precise character of the security which was stipulated for. Indeed it appears that no one was present during the treaty for the loan; nor is there any evidence showing by whom the instrument was prepared, whether by one of the parties, or by another person by the direction of both or either of them. The witnesses found it already prepared to be executed, and it was executed in their presence.

Stress is laid upon the use of the term "mortgage" by the witnesses. Indeed the hypothesis of a mistake in the preparation of the instrument, is wholly founded upon this fact. But if reliance could be placed upon the accuracy of the recollection of the witnesses, as to the use of the precise terms employed by the parties, after the lapse of thirteen years, which had intervened between the date of the transaction and the time of their examination, still the Court cannot conclude that in this case the term " mort-

gage" was used in its technical sense. This identical instrument is called a mortgage, and we have no assurance that the term is not used as a generic term, and in the contemplation of the witnesses would be considered to embrace every species of security, whether a technical mortgage, a *vivum vadium*, or, as in the present case, a power to seize and sell the property. We may add here that the instrument is termed a mortgage by lawyers as well as laymen. The attorney employed in Alabama, in his deposition, calls it a mortgage, and the counsel for appellant not only sets it up in the bill of complaint as a mortgage, but gives it that appellation in the interrogatories propounded to the witnesses in relation thereto ; and it is possible the latter may have been thus inadvertently led to the use of the term, supposing them to be sufficiently acquainted with the legal character of the different securities before enumerated to distinguish between them.

If conjecture is to be resorted to as to what the parties intended, it may just as fairly be presumed that, inasmuch as it is evident Ridley did not design to part with the possession of the property during the time the loan was running to maturity, and as, in such event, if a mortgage had been executed, the creditor, in case of default, as we have before seen, would be put to his suit for foreclosure, he may well have considered that the power to seize and sell the slaves, to redress himself by his own act, without resort to litigation, would be the best form in which the security could be framed, the remedy thus provided being so simple and so summary in its character as to compensate most amply for the risk incurred of the contingencies of the death of the grantor, or constituent, before the execution of the power, or of a sale by him to *bona fide* purchasers, for value, without notice of the existence of such power.

As there is not sufficient evidence to satisfy the Court that the instrument in question violates the manifest intention of the parties, or that it is not the precise security which they contemplated, and conforming in every respect to their agreement, and as the Court deems it hopeless that at this late day, eighteen years having passed away since the date of the transaction, and both the parties dead, there is any possibility of obtaining further and more precise information, and as the decree rendered herein will oppose no obstacle to the prosecution of the appellant's claims as a general creditor against the estate of Ridley, the Court feels constrained to deny the application to modify the decree of dismissal rendered by the Court below.

*Per totam curiam.* The decree of the Circuit Court of the Western Circuit, sitting in equity in and for the County of Franklin, is in all things affirmed, with costs.