A. M. TERWILLIGER, *Appellant*, v. W. W. BALLARD *et al.,* *Appellees.*

1. Where the jurisdiction of the court over the cause and the parties appears, mere questions of technical procedure should not control to impede the proper disposition of the cause.

2. Where A. conveys land to B. in trust to secure the payment of a debt due from C. and with a provision that if the debt is paid in a specified time, the land shall go to C., and if not

paid, the land shall belong to B. absolutely, such an instrument may be a mortgage under the statute.

3. Two mortgages held by one party against another may be foreclosed in one suit.

4. Where parties by means of a trust deed put land in the hands of a trustee to secure a debt due to the trustee by one of the parties, the trustee occupies a relation similar to that of mortgagee in possession, and in the absence of fraud, bad faith or gross negligence, the trustee can be required to account only for proceeds actually received pursuant to the terms of the trust.

Appealed from the Circuit Court for Brevard County.

The facts in the case are stated in the opinion of the court.

*Palmer & Robinson, David R. Dunham* and *Cooper & Cooper,* for Appellant;

*Geo. M. Robbins,* for Appellees.

WHITFIELD, C. J.—It appears that C. C. Kernodle and W. W. Ballard owned in common certain lots of land on which was an orange grove. On November 15th, 1901, Kernodle mortgaged his undivided half interest in the property to The Atlanta Brewing & Ice Company for $1,100.00 to secure his note due one day after date with interest at 8% per annum. On September 26, 1903, a trust deed was executed by W. W. Ballard, A. M. Terwilligar and C. C. Kernodle, whereby W. W. Ballard conveyed his undivided one-half interest in the land to A. M. Terwilligar in trust for Terwilligar to take into his possession the entire property to cultivate, fertilize and work

the orange grove on the land and to gather and ship the crops therefrom; all income from the property to be credited to Kernodle and all expenses debited to him, and if at any time within four years Kernodle shall have paid Terwilligar $300.00 with interest at 10% per annum, then Terwilligar shall yield possession of the property and shall convey the undivided one-half interest of Ballard to Kernodle, his heirs or assigns; that Terwilligar shall render to Kernodle each year after the crop has been shipped and returns therefrom received a true statement of the income and expenses of said property and shall give him credit on said $300.00 and interest for any profits shown by said account and shall charge him with any losses, and if the account shall show a loss (which is not expected) Kernodle shall make up the amount of said loss in addition to the $300.00 and interest before he shall be entitled to demand a deed; if Kernodle shall fail to make the stated payments within the time stipulated, the undivided half part of the property conveyed by Ballard to Terwilligar shall belong to him absolutely freed from any trust in favor of Kernodle or his representatives and Terwilligar shall not have to account to Kernodle for the profits of the grove while the same was held in trust nor if said grove make a loss and Kernodle fails to make the payments stipulated so the trust in his favor is determined shall Kernodle be liable to Terwilligar for the losses of said grove or any unpaid part of said $300.00 or interest. Terwilligar covenants with Kernodle that he will faithfully perform and fulfill the trust so created, and Kernodle consents to all the terms and conditions of the trust deed. On October 19th, 1903, Terwilligar purchased from The Atlanta Brewing & Ice Company for $600.00 the mortgage given to said company by Kernodle of his undivided one-half interest in the property. On

June 12th, 1905, Terwilligar brought proceedings to fore-close the mortgage of Kernodle's half interest in the land which Terwilligar had purchased from The Atlanta Brewing & Ice Co. W. W. Ballard was made a party defendant to the foreclosure proceedings. Kernodle died and his widow and children and his administrator were made parties defendant in his stead.

The defendants by answer admit the mortgage by Kernodle of his half interest in the land to The Atlanta Brewing & Ice Co., but aver that the wife's dower therein was not relinquished and that her dower right exists. The defendants aver that the complainant Terwilligar is in possession of the entire property by virtue of the trust deed referred to above; that before the making of the trust deed Terwilligar proposed to Kernodle that he should help him procure an assignment of said mortgage, but Kernodle expressed a desire that the ownership of the mortgage be not changed unless it would be to Kernodle's advantage, whereupon Terwilligar represented to Kernodle that he would buy said mortgage in Kernodle's interest, and that he would only have to pay the amount for which it could be bought, with interest; that thereupon Kernodle procured the terms of $600.00 for it which Terwilligar paid; that it was understood between Terwilligar and Kernodle that the latter could redeem the mortgage by paying $600.00, and interest as stipulated in the mortgage and expenses incurred by Terwilligar in going from Jacksonville to Atlanta, Ga., where the mortgagee and Kernodle were; that after the execution of the said trust deed, Terwilligar took possession of the orange grove on said property and cut down the palmetto trees that protected the orange trees from winds and frost to the injury of the property and without Kernodle's knowledge or consent and such cutting constituted waste; that

the receipts from the grove had been sufficient to pay Terwilligar and leave a balance due the defendants.

A cross bill was filed by the defendants setting up substantially the matters stated in the answer and alleging in effect mismanagement, waste and the payment of Kernodle's indebtedness from the products of the grove, and prayed for an accounting, that the mortgage be released and the property surrendered, and a conveyance of the Ballard half of the property to the representatives of Kernodle according to the terms of the trust deed, and for general relief.

The cross bill was demurred to on the grounds that it is not confined to the matters of the original suit, and that it does not state a case for equitable relief. The demurrer was overruled. Terwilligar answered the cross bill denying mismanagement of the property, and averring that he has not been paid. A final decree was rendered adjudging that Terwilligar had received sufficient money from the orange grove to fully pay off the mortgage and to require a conveyance under the trust deed, which conveyance with the payment of a balance due from Terwilligar was decreed to be made in due course. Terwilligar appealed.

It is earnestly contended that the court erred in overruling the demurrer to the cross bill, but as the jurisdiction of the court is apparent, questions of technical procedure should not control to impede the proper disposition of the cause.

Although in this case Ballard who conveyed his half interest in the land to Terwilligar in trust was not a debtor to Terwilligar, he in effect became such by conveying his property to secure a debt of Kernodle to Terwilligar, the title to become absolute in Terwilligar in case the debt is not paid. This is not a trust to sell and

convey to pay debts, and by virtue of the scope and purpose of Section 2495 General Statutes, the conveyance from Ballard to Terwilligar in trust to pay Kernodle's debt is in legal effect a mortgage. In this transaction Ballard assumed the relation of debtor to Terwilligar and the latter assumed the relation of creditor and mortgagee in possession. The conveyance was made to secure the payment of a debt. There was no primary purpose to convey an estate, but merely to secure the payment of a debt, not to pay a debt. Hoffman, Burneston & Co. v. Mackall, 5 Ohio St. 124; McGriff v. Porter, 5 Fla. 373, and Soutter v. Miller, 15 Fla. 625 are not analogous. Being a mortgage the owners of the equity of redemption could redeem and the redemption may be had in the same suit in which the other mortgage is involved. By the trust deed the undivided half interest in the land conveyed by Ballard to Terwilliger in trust was to be conveyed to Kernodle on the payment of $300.00 and interest. This gave Kernodle a right to the half interest after the payment of the $300.00 and interest. As the trust deed is in law a mortgage the four year limitation contained in the trust deed for the payment of the debt does not make the failure to pay the debt operate to give the property to Terwilligar merely upon the default in the payment. While the provision as to Terwilligar's possession of Kernodle's half interest contained in the trust deed is subordinate to the right to foreclose the prior mortgage covering that half interest, yet prior to such foreclosure the proceeds from the entire property may by agreement be used towards paying the indebtedness due from Kernodle to Terwilligar. Treating the deed of trust as a mortgage of Ballard's half interest in the land to secure Kernodle's $300.00 debt, and considering the mortgage given by Kernodle on his half interest to the Atlanta

Brewing & Ice Co., and purchased by Terwilligar, the latter then had mortgages covering the entire property. One mortgage being on Ballard's undivided half interest to secure the payment of $300.00 and interest stated in the deed of trust, construed to be a mortgage, and the other mortgage being on Kernodle's half interest to secure the payment of that mortgage debt. If the proceeds of the grove have been sufficient to pay the $300.00 and interest the lien on the half interest formerly owned by Ballard should be relinquished or conveyed to Kernodle or his representatives. If Terwilligar has received money due to Kernodle sufficient to pay off the amount due to Terwilligar on the mortgage he holds on Kernodle's original half interest in the land, the mortgage should be discharged. If the mortgages have not been paid or satisfied they may be foreclosed in one suit. See Key West wharf & Coal v. Porter, 63 Fla. 448, 58 South. Rep. 599.

The parties having by means of the trust deed put Terwilligar in possession of the entire property with stated trust duties, they can require him to account only for proceeds actually received and for expenses actually incurred pursuant to the terms of the trust, in the absence of a showing of fraud, bad faith or gross negligence on the part of Terwilligar. In stating the account actualities alone should be considered. Estimates or guesses as to what should have been realized from an orange grove should not be considered where the person whose duty it is to account has acted in good faith with reasonable pru dence and within the trust conferred upon him.

If by agreement proceeds from the grove were paid to Kernodle proper credits may be allowed on appropriate procedings. Proofs of payment to a deceased person may be made without violating the statutory or common law rules of evidence. In the absence of a showing of right

to the contrary the mortgagor is required to pay the full amount of the mortgage indebtedness.  See Key West Wharf & Coal Co. v. Porter, *supra*.

With these principles as a guide, questions of the admissibility of evidence may not again arise.  As the accounting was not made upon the general lines indicated herein, the decree is reversed and the cause is remanded for furthr proceedings not inconsistent with law and the general rules stated herein.

TAYLOR, SHACKLEFORD, COCKRELL and HOCKER, J. J., concur.