OLIVE H. JOHNSON, *Appellant*, v. O. C. BENBOW, *Appellee.*

Opinion Filed January 21, 1927.

1. Where a demurrer to a bill in equity is divided into five "parts," one "part" being addressed to the entire bill, and the remaining four "parts" of the demurrer each containing several grounds and severally addressed to separate portions or allegations of the bill, that "part" addressed to the entire bill will be treated as a general demurrer, and the other "parts" as separate demurrers to the several paragraphs or allegations of the bill to which they are severally addressed.

2. A general demurrer to a bill of complaint will be overruled, if there is any equity in the bill.

3. "To render a bill in equity 'multifarious' for misjoinder of causes, it must contain two or more distinct and independent causes of action that cannot be properly joined in one bill

of complaint." Mountein v. King, 75 Fla. 12, 77 South. Rep. 630.

4. "While a bill in equity should not contain distinct and disconnected causes of action as to which different independent decrees may be rendered, yet one defendant against whom relief is sought in every phase of the case, is not as a general rule prejudiced by the joinder of such matters, and he cannot in general justly complain, on his demurrer to the bill of complaint, of having one, rather than several, suits brought against him."—*Ibid.*

5. Frequently the fact that demands which are otherwise entirely distinct relate to the same subject-matter affords a sufficient connection to justify their union in one bill, and avoids an objection for multifariousness."—*Ibid.*

6. Where the owner of real estate files a bill in equity against the holder of two tax deeds for said property, one of said tax deeds having issued for the delinquent State and county taxes and the other for delinquent drainage taxes upon said property, each of said deeds, according to the allegations of the bill, being invalid, but casting a cloud upon the owner's title; *Held:* that the respondent, the holder of such tax deeds, cannot, in such suit brought to quiet title as against such tax deeds, complain that the bill is multifarious.

7. Where, in a bill filed to cancel tax deeds and to quiet title as against them, it is alleged that the said tax deeds were issued to one, other than the purchaser to whom tax sale certificates were issued, and that such tax sale certificates were never assigned to the grantee named in said tax deeds, and that there was no endorsement of an assignment on such tax sale certificates, and that neither of the tax deeds recited that the tax sale certificates, for which the respective tax deeds issued, were assigned by the purchaser to the grantee named in such tax deeds; *Held:* that it was not necessary that the bill of complaint allege either payment of the taxes, interest and charges which had been paid by the purchaser at the tax sale, or by the grantee named in the tax deeds, or an offer and readiness, willingness and

ability to pay such amount as the Court might decree should be paid therefor.

8. To enable any other than the purchaser at a tax sale to take a tax deed to the property sold, there must be an assignment of the tax sale certificate, and a recital of such assignment should be made in the deed.

9. Where it appears, by proper allegations of a bill in equity to remove and cancel tax deeds as clouds upon complainant's title, that the purchaser of property at tax sales had not assigned the tax sale certificates to the grantee in the tax deeds, and that the tax deeds contained no recital of such assignments, the complainant is not required to allege either payment, or an offer, readiness, willingness and ability to pay the holder of such tax deeds the taxes, interest and charges that may have been paid by the said holder of such deeds.

10. "A defendant may put in separate and distinct causes of demurrer; for the same grounds of demurrer frequently will not apply to different parts of a bill, though the whole may be liable to demurrer, and in such a case one demurrer may be overruled upon argument and another allowed." Fletcher's Pleading and Practice, par. 201.

11. "Where a bill in equity sets forth various claims by distinct and separate paragraphs, and the defendant files general demurrer, such demurrer will be overruled if any of the claims be proper for the jurisdiction and cognizance of the Court in that form of proceedings; but where there is a demurrer to the whole bill, and also specially to different claims set out therein, and a part of those claims so demurred to are of such a character as to authorize no relief in such a suit, the Court should sustain the demurrer in part and dismiss as to so much of the bill as seeks relief in reference to matters adjudged bad, and overrule the demurrer to the residue, and give rule against the defendant to answer the bill as to such residue." Gay v. Skeen, 36 W. Va. 582, 15 S. E. Rep. 64.

12. In a bill of complaint to set aside a tax deed for State and County taxes, and also a tax deed for drainage taxes, the complainant alleges that the property "was assessed for State and County purposes and for drainage purpose for a sum materially less than the sum for which the property sold; that the sum for which the said property was assessed, plus all charges for advertising, costs and penalties, as allowed by law was not as great as the sum for which said property was sold; that said property was sold in excess of the legal assessment imposed upon the said property." *Held:* that such allegations are mere conclusions of the pleader, and that the separate demurrer to such allegations should be sustained.

13. Where a section of land is subdivided into parcels designated as "tracts," and a plat with such designations is filed in the office of the Clerk of the Circuit Court, and the said parcels are conveyed as "tracts" according to such recorded plat, an assessment of such "tracts" as "*lots*" is improper, and cannot, under the law, be said to be sufficient to warrant a valid sale of the property for the unpaid taxes thereon.

14. Where, in a bill in equity to set aside a drainage tax deed, it is alleged that there was no assignment of the drainage tax sale certificates by the purchaser to the grantee named in such tax deed, and that therefore such tax deed was issued to one who was not entitled to it, such allegation shows that the drainage tax deed was improperly issued, and is therefore a cloud upon complainant's title and will withstand a demurrer, notwithstanding the provisions of Section 1176, Revised General Statutes of Florida, restricting the grounds for attacking the validity of deeds for drainage taxes.

15. There is nothing in Chapter 8513, Laws of Florida, Acts of 1921, authorizing the Clerk of the Circuit Court of DeSoto County, Florida, to issue tax deeds to lands in Glades County, Florida, after its organization.

16. A notice of application to the Clerk of the Circuit Court for a tax deed must, under the law, be published in the county

in which the lands are situated at the time of such application.

An Appeal from the Circuit Court for Glades County; George W. Whitehurst, Judge.

Affirmed in part.

Reversed in part.

*R. C. Horne,* for Appellant.

*R. E. Kurtz,* for Appellee.

CAMPBELL, Circuit Judge—The appellee, O. C. Benbow as complainant in the Court below, alleging himself to be the owner in fee simple of certain lands, described as tract 38, the north half of tract 43, and all of tracts 44, 45, 46 and 47 in Section 14, Township 42 South, Range 32 East, in Glades County, Florida, filed bill of complaint against Olive M. Johnson, as respondent, wherein he seeks to have two certain tax deeds upon said property declared to be void and cancelled as clouds upon his title.

It is alleged in the bill of complaint that the tax collector of DeSoto County, Florida, on the 7th day of July, 1919, undertook to sell the property described for the State and County tax, and also for the drainage tax, due thereon for the year 1918, and that at such sale one, W. H. Pontius, became the purchaser of the property, the said tax collector issuing to him six tax sale certificates for the State and County tax and six tax sale certificates for the drainage tax.

It is further alleged that on the 8th day of August, 1921, the clerk of the Circuit Court of DeSoto County undertook and attempted to convey the property described to Olive H. Johnson, the respondent, the said conveyance being a tax

deed, based upon the tax sale certificates for State and County tax above mentioned; and that on the 24th day of September, 1921, the said clerk of the Circuit Court of DeSoto County, Florida, executed and delivered to Olive H. Johnson a tax deed upon the drainage tax sale certificates mentioned above, thereby, in each of said deeds, undertaking to convey the property of complainant.

The bill of complaint then alleges that both of said tax deeds are null and void, and should be set aside and cancelled by the Court as clouds upon complainant's title to said property, for the following reasons, to-wit:

"That said property was assessed on the assessment roll for the year 1918 for State and County purposes as lot 38 in said section, township and range, as the North Half of lot 34 in said section, township and range, as lot 44 in said section, township and range, as lot 45 in said section, township and range, as lot 46 in said section, township and range, and as lot 47 in said section, township and range, and that said property was assessed for drainage purposes, or attempted to be assessed for such purposes, or claimed to have been assessed for such purposes, under the description of lot 38, N½ of lot 43, lot 44, lot 45, lot 46, and lot 47, respectively, in said section, township and range, and was assessed for State and County purposes, and for drainage purposes, for a sum materially less than the sum for which said property was sold; that the sum for which said property was assessed plus all charges for advertising costs and penalties as allowed by law, was not as great as the sum for which said property was sold; that said property was sold in excess of the legal assessment imposed upon the said property.

"Your orator further represents unto the Court that there is no property located in said section, township and range, and so described upon the records of said county and

5—Vol. 93

State, as lots 38, N½ of lot 43, lot 44, lot 45, lot 46, or lot 47, and that the property of your orator as heretofore stated was designated upon the plats theretofore filed in said section, and upon all the public records of said county and State, as tract No. 48, N½ of tract No. 43, tract No. 44, tract No. 45, tract No. 46 and tract No. 47, respectively, and are so described in all conveyances of said property, and not otherwise.

''That the deeds respectively above described, executed by the Clerk of the Circuit Court to the said defendant, are null and void for the further reason that the tax certificates executed by the tax collector of DeSoto County, Florida, evidencing the sale made by him as aforesaid, were executed to the said W. H. Pontius, and that the said certificates were never assigned by the said W. H. Pontius to the said Olive H. Johnson; that the said certificates were merely presented to the clerk of the Court of DeSoto County, Florida, with a request that said clerk make, execute and deliver to the said Olive H. Johnson the deeds aforesaid; that neither of said deeds recite the fact that said deeds were executed in pursuance to the tax certificate numbers aforesaid issued by the tax collector to the said W. H. Pontius; that neither of said deeds recite the fact that said tax certificates were assigned by said W. H. Pontius to the defendant, Olive H. Johnson, but that said deeds recite that they are, and appear upon their face to have been executed by the said clerk of the Circuit Court of DeSoto County, Florida, to the said Olive H. Johnson, as if she were the purchaser of said property at said tax collector's sale, and as if she were the original owner and holder of said crtificates, and not the assignee thereof.

''Your orator further represents that said deeds are void for the further reason that the property of your orator is located in Glades County, Florida, and was at the time of

the execution and delivery of said tax deeds by the clerk of the Circuit Court of DeSoto County, Florida, as aforesaid; that the clerk of the Circuit Court of DeSoto County, Florida, had no authority or legal power to execute tax deeds attempting to convey the property of your orator located in Glades County, Florida.

"Your orator further represents that no advertisements of the issuance of the said tax deeds or either of them was ever made in Glades County, Florida, by the clerk of the Circuit Court of Glades County, Florida, who alone was authorized by law to advertise that a certificate had been filed with him, and that a tax deed would issue on a day certain; that, regardless of the fact that no legal notice had been published, and regardless of his legal authority, the clerk of the Circuit Court of DeSoto County, Florida, issued the tax deeds above mentioned, and the said deeds were filed for record in the office of the clerk of the Circuit Court of DeSoto County, Florida, after the creation of Glades County, Florida, and your orator avers the truth and charge to be, that the said deeds have been transcribed in effect into the records of Glades County, Florida, and now constitute a cloud upon the title of your orator which tends to hinder and embarrass him in the sale and disposition of said property, and should be cancelled, set aside, and annulled, and the title of your orator quieted as to the same."

The respondent in the Court below demurred to the bill of complaint. After considering the demurrer, the Court overruled it in the following language: "After argument, demurrer overruled, defendants may answer on July rule-day. June 15, 1926."—Signed by the Chancellor.

From this order the respondent appeals and assigns six errors in the Court below:

The respondent divided her demurrer into five "parts." The first "part" was addressed to the entire bill and was,

therefore, a general demurrer, the other four parts of the demurrer each containing several grounds, were severally addressed to separate portions or allegations of the bill of complaint.

The first two assignments of error may be considered together, as they both attack the ruling on the general demurrer to the bill of complaint.

We have repeatedly held that a general demurrer to a bill of complaint should be overruled, if there is any equity in the bill. Warren v. Warren, 66 Fla. 138, 63 South. Rep. 726; Williams v. Black, 73 Fla. 309, 74 South. Rep. 312; West Palm Beach v. Ryder, 73 Fla. 558, 74 South. Rep. 603; Prince v. Mahin, 73 Fla. 525, 74 South. Rep. 696; Carlton v. Hilliard, 64 Fla. 228, 60 South. Rep. 222.

Under the first "part" of the demurrer we shall, therefore, consider the bill as a whole, and determine whether or not it contained sufficient equity to withstand a general demurrer.

The objections to the bill of complaint, as raised by the general demurrer, may be briefly stated as follows:

1.   That it is multifarious, in that it seeks, in the same bill, to set aside a tax deed for State and County taxes and a tax deed for drainage tax.

2.   The allegations as to the defects in the respective tax deeds are vague, indefinite and uncertain.

3.   That the complainant does not offer to do equity; that is, he does not allege payment of taxes due on the property, or an offer to reimburse the respondent for the taxes, interest and expenses paid.

It is contended by the solicitor for the appellant that the bill is multifarious because of an unauthorized joinder of causes of action, one to have a tax deed for State and County taxes cancelled, and the other to have a tax deed for drainage taxes cancelled, the reason given for this con-

tention being, that defects and irregularities that will vitiate a tax deed for State and County taxes will not, under Section 1176, Revised General Statutes, render a tax deed for drainage tax invalid.

This Court has held that multifariousness goes to convenience more than to merit.   Prince v. Mahin, *supra;* Carlton v. Hilliard, *supra.*

We have also held the following: ''To render a bill in equity 'multifarious' for misjoinder of causes, it must contain two or more distinct and independent causes of action that cannot properly be joined in one bill of complaint.'' Mountein v. King, 75 Fla. 12, 77 South. Rep. 630.   In the same case this Court had the following to say regarding multifariousness: ''While a bill in equity should not contain distinct and disconnected causes of action as to which different independent decrees may be rendered, yet one defendant against whom relief is sought in every phase of the case, is not prejudiced by the joinder of matters, and he cannot in general justly complain on his demurrer to the bill of complaint of having one, rather than several suits brought against him.''

In the instant case we have a bill of complaint, filed by the alleged owner of real estate, against the holder of two tax deeds for said property, each, according to the allegation of the bill of complaint, containing defects rendering it invalid and a cloud upon the title of the said alleged owner.   It is a bill filed to remove two alleged clouds upon title held by the same party.

''Frequently the fact that demands which are otherwise entirely distinct relate to the same subject-matter affords a sufficient connection to justify their union in one bill, and avoids an objection for multifariousness.''   Mountein v. King, *supra.*

The respondent in this case, being the holder of two tax

deeds, which are alleged to be clouds upon the same property, cannot, in this suit, brought by the owner of the property to quiet her title against such tax deeds, complain that the bill is multifarious.

The next contention is that the allegations of the bill of complaint as to defects in the respective tax deeds are vague, indefinite and uncertain. While the allegations as to some of the defects may not have been as clearly and distinctly stated as they might have been, yet the bill of complaint, as a whole, does contain allegations sufficiently clear and definite to withstand the objection that the allegations of the bill, as a whole, are vague, indefinite and uncertain.

The third objection to the bill of complaint raised by the general demurrer, is that the complainant failed to offer to do equity.

Even if we should hold, under Section 795, Revised General Statutes, that a complainant seeking a quiet title as against alleged invalid tax deeds, should either allege payment of the taxes, interest and charges, which had been paid by the purchaser under the tax deed, or allege an offer and readiness, willingness and ability to pay such amount as the Court might decree should be paid therefor, we do not think the complainant in this case would be required, under the facts set forth in the other allegations of the bill, to allege a payment or an offer and readiness, willingness and ability to pay.

The bill of complaint alleges that the tax sale certificates upon which the respective tax deeds were issued "were executed to W. H. Pontius, and that said certificates were never assigned by W. H. Pontius to the said Olive H. Johnson," and furthermore, that neither of the respective tax deeds recites the fact that the said tax sale certificates for which the respective deeds issued were assigned by said W. H. Pontius to the defendant, Olive H. Johnson."

Section 767, Revised General Statutes, provides that all tax sale certificates, whether issued to the State or to individuals, shall be transferable by endorsement.

We have heretofore held, in the cases of Sanders v. Ransom, 37 Fla. 457, 20 South. Rep. 530, and Ropes v. Kemp, 38, Fla. 233, 20 South. Rep. 992, that to enable any other than the purchaser at tax sale to take a deed, there must be an *assignment* of the tax sale certificate, and the fact of such assignment should be stated in the deed.

Section 766, Revised General Statutes, which gives the form of tax sale certificates for State and County taxes, provides that the purchaser *"or his assigns"* will be entitled to deed, etc. A like provision is found in Section 1173, Revised General Statutes, providing for the form of drainage tax sale certificates.

If it were true, as set forth by proper allegations of the bill of complaint, that W. H. Pontius, the purchaser, had not assigned the tax sale certificates to respondent, the grantee named in tax deeds, and that the tax deeds contained no recital of such assignments, then the complainant would not be required to pay to the respondent the taxes, interest and charges paid by the purchaser; neither would he be required to allege such payment, or an offer and readiness, willingness and ability to pay same, as the allegations of the bill, which the demurrer admits, show that the respondent was neither the purchaser at said sale nor the assignee of the tax sale certificates.

We think, therefore, that the third objection to the bill under the general demurrer is untenable.

The Court below did not err in its order overruling the general demurrer to the bill of complaint.

As we have already said, the respondent filed her demurrer in "parts," the first "part" being general, addressed to the entire bill, which we have just considered, and the

other "parts" or divisions of the demurrer being addressed to each of several parts of the bill of complaint.

Story, in his work on Equity Pleading, 438, says: "A defendant may put in separate and distinct causes of demurrer; for the same grounds of demurrer frequently will not apply to different parts of a bill, though the whole may be liable to demurrer, and in such a case one demurrer may be overruled upon argument and another allowed." See also Fletcher's Pleading and Practice, Par. 201; Powder Co. v. Powder Works, 98 U. S. 126, 25 L. Ed. 77; Gay v. Skeen, 36 W. Va. 582, 15 S. E. Rep. 64.

"Where a bill in equity sets forth various claims by distinct and separate paragraphs, and the defendant files general demurrer, such demurrer will be overruled if any of the claims be proper for the jurisdiction and cognizance of the Court in that form of proceedings; but when there is a demurrer to the whole bill, and also specially to different claims set out therein, and a part of those claims so demurred to are of such a character as to authorize no relief in such a suit the Court should sustain the demurrer in part and dismiss so much of the bill as seeks relief in reference to matters adjudged bad and overrule the demurrer as to the residue, and give rule against the defendant to answer the bill as to such residue." Gay v. Skeen, *supra*.

The case at bar is not one in which a demurrer addressed to the entire bill of complaint contains grounds that are applicable to particular parts thereof; but in this case we have demurrers, separate and apart from the general demurrer, addressed to objectionable allegations of the bill of complaint. We must, therefore, consider the assignments of error, dealing with the order appealed from as it relates to the demurrer as addressed to these separate parts of the bill of complaint.

The third assignment of error sets forth the appellant's

objection to the ruling of the court in overruling Part II of the demurrer.

This section of the demurrer questions the sufficiency of that portion of the bill of complaint which alleges that the property described in the bill of complaint "was assessed for State and County purposes and for drainage purposes, for a sum materially less than the sum for which the property sold; that the sum for which the said property was assessed, plus all charges for advertising costs and penalties, as allowed by law, was not as great as the sum for which said property was sold; that said property was sold in excess of the legal assessment imposed upon the said property."

When property is sold for taxes, it should not be sold for an amount greater than the taxes assessed against it, plus the advertising costs and penalties. Sections 760 and 1171, Revised General Statutes of Florida. The demurrer to this portion of the bill complains that it only states the opinion of the complainant and fails to state facts upon which his opinion is based. In other words, it is contended that it set forth conclusions of fact and conclusions of law.

The complainant should show, by the allegations of his bill, the amount of State and County tax, and also the drainage tax, upon the property, as also amount properly charged for advertising costs, penalties, etc., in each instance, and then he should have alleged the amount for which the property was sold at the tax sale. He should have alleged facts instead of his opinions and conclusions. Deans v. Wilconon, 25 Fla. 780, 7 South. Rep. 163; McClinton v. Chapen, 54 Fla. 510, 45 South. Rep. 35.

The appellant contends, under the fourth assignment of error, that the portion of the bill of complaint which alleges that the property was described in tax assessments as "lots" instead of "tracts," does not show such an irregularity as

would render the assessment void.   Under the demurrer to this portion of the bill of complaint it is contended that ''lots'' and ''tracts'' are synonymous terms, and that there is no allegation that the description of said property as ''lots'' rather than ''tracts'' is so indefinite that the property could not be located.

From the allegations of the bill of complaint we do not think the words ''lot'' and ''tract'' can be considered as synonymous.   Under the government surveys the subdivisions of certain sections of land are described as ''lots,'' but the number of lots in any one section never reaches the numerals used in describing the parcels of land set forth in the bill of complaint.   It is evident, therefore, that the ''tracts'' described in this case are not ''lots'' into which the government divided this section, but that some private survey has been made, designating the subdivisions as ''tracts.''

In the case at bar it appears that Section 14, Township 42 South, Range 32 East, was sub-divided into parcels of land designated as ''tracts,'' and that a plat of such survey, describing the property which complainant claims as tract No. 38, N½ of tract No. 43, tract No. 44, tract No. 45, tract No. 46, and tract No. 47, was filed and placed upon the public records of said county.

Under Section 718, Revised General Statutes, it is provided: ''That when private surveys of land, or descriptions by metes and bounds have taken the place of government surveys, and the land is known, designated and described only by such private survey or metes and bounds, the description in the assessment shall be made in accordance with such survey or description as recorded in the office of the clerk of the Circuit Court,'' etc.

Under the provisions of Section 1168, where land lies within a drainage district, the drainage tax is assessed on

the tax roll in a separate column, under the head of "drainage taxes." It is contemplated that the assessor describe the lands for drainage taxes the same as the statute requires for State and County taxes.

Where a section of land is subdivided into parcels designated as "tracts," and the plat with such designation is filed in the office of the clerk of the Circuit Court, and the said parcels are conveyed according to such plat and designated as "tracts," an assessment of such "tracts" as "lots" is improper, and cannot be said to be sufficient, under the law, to warrant a valid sale of the property for the unpaid taxes thereon.

The Court did not err in overruling this portion of the demurrer.

It is contended under the fifth assignment of error that the Court below erred in not having sustained the fourth division of the demurrer to the bill of complaint. This section of the demurrer was directed to that portion of the bill of complaint which alleged that the tax sale certificates, upon which the tax deeds issued, were never assigned by W. H. Pontius to the said Olive H. Johnson, the respondent, and that the tax deeds failed to recite an assignment.

What we have had to say in considering the general demurrer, disposes of the demurrer directed specially to this particular part of the bill of complaint. In order that the deed to the respondent be held a valid deed, it is necessary that the tax sale certificates ·for which the deeds issued be assigned to her, and that the deeds recite such assignment. There was no error in the Court's failure to sustain the respondent's demurrer to this portion of the bill of complaint.

The sixth assignment of error raises the question as to whether or not the court erred in overruling the demurrer designated as Part V. This division of the demurrer was

addressed to the entire bill, in so far as it attempts to attack the Everglades Drainage Tax Deed. It may be termed a general demurrer to all the allegations of the bill of complaint, with reference to the invalidity of the tax deed issued upon the drainage tax certificates.

If there were any grounds for equitable relief against the drainage tax deed, shown by the allegations of the bill, this division of the demurrer should have been overruled.

The constitutionality of Section 1176, Revised General Statutes, is not raised by the appellee in his brief, and we will not go into the question ourselves, as the case may be disposed of without considering the constitutionality of this section.

It is alleged in the bill of complaint that at the sale of the land for drainage taxes the same was sold to W. H. Pontius and that tax sale certificates were issued to him therefor. It is further alleged that there was no assignment of these certificates by Pontius to the respondent. Regardless, then, of the provisions of Section 1176, restricting the grounds of attacking the validity of deeds for drainage taxes, it is shown from the allegations of this bill that the drainage tax deed was issued to one who was not entitled to it. This allegation, undenied, shows that the drainage tax deed set forth in the bill was improperly issued, and, therefore, a cloud upon the complainant's title.

It further appears from the allegations of the bill of complaint that the tax deed for drainage tax, as also the tax deed for state and county·taxes, were executed by the Clerk of the Circuit Court of DeSoto County, when the lands, at the time of the execution of the respective tax deeds, were a part of Glades County.

Glades County was organized under Chapter 8513, Laws of Florida, Act of 1921, which became effective April 23, 1921. Section 20 of Chapter 8513 contains the following

provision touching the possession, sale and redemption of tax sale certificates, to-wit: "And on the 30th day of September, 1921, all unredeemed tax sale certificates on land lying in any such new county as herein established, shall be delivered by the Clerk of the Circuit Court for DeSoto County to the Clerk of the Circuit Court for such new county, who shall give his receipt therefor to said Clerk of the Circuit Court for DeSoto County, which receipt shall be forwarded by said Clerk of DeSoto County to the State Comptroller, who shall credit said Clerk with said certificates, and charge the same to the Clerk of the Circuit Court for such new county. All redemptions, or sale of certificates, as to lands in said new counties made on or after the 30th day of September, 1921, shall be made through the Clerk of the Circuit Court for such new county in which the same is situated; all redemptions or sales of the same made after the passage of this Act, and prior to the 30th day of September, 1921, shall be made through the Clerk of the Circuit Court for DeSoto County. Provided, that as to any certificates held by the State, so redeemed or sold through said Clerk of the Circuit Court for DeSoto County, after the passage of this Act and prior to the 30th day of September, 1921, the Comptroller shall remit to the proper officers of the said new county and sub-districts thereof the amounts due them."

It is evident that the legislators, in passing Section 20, Chapter 8513, had in mind the tax sale certificates for State and county taxes held by the State. From the passage of the Act creating Glades County until September 30, 1921, the Clerk of the Circuit Court of DeSoto County was to have in his charge "all redemptions or sales" of tax sale certificates in the new county. And he was to remit to the Comptroller the State's share of the money received for any sale or redemption of certificates. There is no pro-

vision whatever in Chapter 8513 for the Clerk of the Circuit Court of DeSoto County, Florida, to have the control of unredemed drainage tax sale certificates, nor for the redemption or sale thereof to be made through him after the organization of Glades County. The moneys derived from the sale or redemption of drainage tax certificates held by the State authorities, is not remitted to the Comptroller, but to Trustees. Under the provisions of Section 1176, Revised General Statutes, tax sale certificates for drainage taxes are to be redeemed ''by paying to the Clerk of the Circuit Court of the County wherein such lands may lie'' the amount called for in said certificates. This section of the Revised General Statutes also provides that the holder of any certificate for drainage tax sale shall apply to the ''Clerk of said Circuit Court'' for a deed to the land described in the certificate, ''Clerk of said Court'' referring back to the beginning of the section, which provides for the redemption of tax sale certificates through the Clerk of the Circuit Court ''for the county wherein the land lies.''

Section 1176, *ibid,* also requires that the Clerk of the Circuit Court ''wherein the land lies'' shall cause to be published in a newspaper ''in said county'' once a week for four weeks, a notice of such application for tax deed, etc.

There is nothing in Chapter 8513, Laws of Florida, Acts of 1921, authorizing the Clerk of the Circuit Court of DeSoto County, Florida, to issue tax deeds to lands in Glades County, Florida, after its organization.

The bill alleges that the drainage tax deed was issued by the Clerk of DeSoto County, Florida, on the 24 day of September, 1921, and that there was no notice of the proposed issuance of said deed published in Glades County, Florida.

We find that there were sufficient equities in the allega-

tions of the bill of complaint with reference to the drainage tax deed to withstand the general demurrer thereto in "part" five of the demurrer.

From what has been said the order of the Court below overruling the demurrer will be affirmed, except that part directed against the allegations of the bill of complaint relating to the sale of the property by the tax collector for a sum exceeding the taxes, costs and penalties. The order of the Court overruling the demurrer to this part of the bill will be reversed, with directions to the Court below to enter an order sustaining the same, and make such order as it may deem proper allowing amendment in this particular.

Affirmed in part.

Reversed in part.

ELLIS, C. J., AND WHITFIELD, STRUM, BROWN AND BUFORD,. J. J. concur.

TERRELL, J., disqualified.