THE CENTURY TRUST COMPANY OF BALTIMORE, a corporation organized and existing under the laws of the State of Maryland, as Trustee, *Appellant*, vs. THE ALLISON REALTY COMPANY, a corporation of Florida; BALDWIN INVESTMENT CORPORATION, a corporation of Florida; and CORAL GABLES CORPORATION, a corporation of Florida, *Appellees*.

141 So. 612.

En Banc.

Opinion filed May 11, 1932.

*Kurtz & Reed, John Hinkley* and *Chas. S. Lerch,* Attorneys for Appellant;

*Shutts & Bowen,* Attorneys for The Allison Realty Company.

DAVIS, Commissioner.—On May 19th, 1928, The Allison Realty Company filed its bill of complaint for the foreclosure of a mortgage given by Coral Gables Corporation to John B. Orr, Inc., and assigned to the said The Allison Realty Company. The bill also sought to establish and foreclose a mechanic's lien on the property described in the bill of complaint and also described in said mortgage, for work and labor performed in the erection of a building upon said property by John B. Orr, Inc., which lien is alleged to have been assigned to the said The Allison Realty Company. The Coral Gables Corporation filed a plea to the bill of complaint wherein it was alleged that John B. Orr, Inc., was the owner of a contract made and entered into between John B. Orr and the Coral Gables Corporation and under the contract the owner agreed to pay the contractor the costs incurred in the performance of the contract and the commission in the form of a set fee of $50,000.00; that on October 15th, A. D. 1926, said defendant made, executed and delivered to the said John B. Orr, Inc., the mortgage sought to be

foreclosed and that it was then and there understood and agreed that said mortgage should be in full and complete accord and satisfaction of all sums of money agreed and promised to be paid by said defendant to the said John B. Orr, Inc., and that said defendant had fully paid and discharged the debt secured by said mortgage and further that the defendant had parted with the title to the property. This plea was thereafter, by order of the Court, allowed to stand as an answer to the bill. An answer was filed by the Baldwin Investment Corporation. The Century Trust Company of Baltimore interposed an answer to the bill of complaint, including in in said answer a demurrer to the bill, and also filed a cross-bill, in which it made all parties to the original bill cross-defendants, and in which it sought to establish three mortgages held by it as being prior to the mortgage and lien sought to be foreclosed under the original bill and asked for foreclosure of said three mortgages. An answer to the cross-bill was filed by The Allison Realty Company, which answer contained a denial of the priority of the mortgages held by The Century Trust Company of Baltimore over the mortgage and lien set up in the original bill. The cause was referred to a General Master who, after hearing the testimony, reported to the Court as his findings, that the mortgage held by The Allison Realty Company should be construed to secure only amounts that were due at the time it was executed and that the same had been paid, but that the complainant, The Allison Realty Company, was entitled to a mechanic's lien and that such lien was prior and superior to the liens and interests of The Century Trust Company of Baltimore and the other parties to said cause. Exceptions were filed to said report by both the Century Trust Company of Baltimore and The Allison Realty Company. Upon final hearing

the Court confirmed the Master's findings and decreed that the mortgage held by The Allison Realty Company had been paid but that the complainant, The Allison Realty Company, was entitled to a lien on account of the Orr building contract in the amount of $48,754.86, together with interest from January 10th, 1929, and that such lien was prior and superior to the three mortgages held by the appellant. From this decree an appeal was entered by The Century Trust Company of Baltimore. A number of errors have been assigned by appellant, and cross-assignments of error have been filed by The Allison Realty Company. One of the principal grounds of contention between appellant and The Allison Realty Company is based upon a provision in the mortgage from Coral Gables Corporation to John B. Orr, Inc., and held by The Allison Realty Company as assignee, which reads as follows:

"It is understood and agreed by and between the parties hereto that the balance due and unpaid, if any, by Coral Gables Corporation to John B. Orr, Inc., for the construction of a certain building known as the Douglas Entrance on the above described property, according to a contract dated August 5, 1925, between John B. Orr, an individual, and Coral Gables Corporation, which contract was assumed by John B. Orr, Inc., shall be added to the indebtedness secured hereby, and is hereby included in the lien of this mortgage."

It may be said that this mortgage secured six promissory notes, maturing at different times, copies of which were therein set out, aggregating the sum of $30,000.00 and the record reveals that at the time of giving the mortgage there was due to John B. Orr, Inc., under the contract, approximately $100,000.00, a part of which was thereafter paid in cash and the balance, with the exception of the amounts represented by said notes, in pursuance of a verbal agreement, was paid by transfer

and delivery of stock of the Coral Gables Corporation to John B. Orr, Inc.

The complainant, The Allison Realty Company, sought to show by parol testimony, that the mortgage held by it was intended to cover all amounts that might become due to the mortgagee under the contract for the construction of the building on the property described in the mortgage but testimony along this line was excluded by the Master, and the exclusion of such testimony forms the basis for cross-assignments of error relied upon by The Allison Realty Company. If it should be held that the mortgage covers the amount that became due for work and labor performed and also for materials furnished subsequent to the execution and delivery of said mortgage and that the mortgage should be enforced, there is no basis for a claim that a lien for such work and labor and for material so furnished should be enforced, it being agreed by both parties that the indebtedness alleged to be secured by both liens is the same and that the property involved is the same.

It is stated in brief of appellant that the appeal, as far as it is concerned, presents two major questions which are set out as follows:

"Did the court err in overruling, at final hearing and by final decree, the demurrer included in the appellant's amended answer to the bill of complaint?

"2. Did the court err in decreeing, by its final decree, that The Allison Realty Company was entitled to a lien, and that such lien was prior to the three mortgages held by appellant?"

The demurrer as it is incorporated in the answer is addressed to the whole bill and in support of the demurrer the one question argued here is that the bill is multifarious and that for that reason the demurrer thereto should have been sustained by the Chancellor. However,

the bill does not seem to have been expressly demurred to upon that ground.

It is the rule here that in passing on a demurrer to the entire bill, only such grounds as are applicable to the whole bill will be considered, and that a demurrer to the entire bill should be overruled, if there is any equity in the allegations of the bill, even though grounds for a special demurrer exists in parts of the bill. Mitchell vs. Mason, 65 Fla. 208, 61 So. 579; Warren vs. Warren, 66 Fla. 138, 63 So. 726; Prince vs. Mahin, 73 Fla. 525, 74 So. 696; Downing vs. Carlton, 76 Fla. 490, 80 So. 57. See also Leavine vs. B. A. I. Ass'n., 88 Fla. 553, 102 So. 768; Reinschmidt vs. L. & N. R. Co., 90 Fla. 334, 106 So. 126; Prest vs. Hammock, 92 Fla. 941, 111 So. 112; Oakland Properties Corp. vs. Hogan, 96 Fla. 52, 118 So. 850; Dittmar vs. Woods-Hoskins-Young Co., 98 Fla. 513; 123 So. 919; Clapp vs. Coral Gables Corporation, 98 Fla. 1230, 125 So. 369; Stokes vs. Victory Land Co., 99 Fla. 795, 128 So. 408; Orange Belt Land Exchange vs. Spear, 100 Fla. 182, 129 So. 779.

This Court has also held that multifariousness is ground for demurrer whenever it plainly appears in a bill. Murrell vs. Peterson, 57 Fla. 480, 49 So. 31; Trust Co. of Florida vs. Crider, 102 Fla. 593, 136 So. 434; Robinson vs. Springfield Co., 21 Fla. 203.

> "Broadly speaking 'multifariousness' in a bill may be defined as 'the improperly joining in one bill distinct and independent matters, and, thereby confounding them. There are at least two general and distinct forms of multifariousness; one consisting in uniting in the same bill distinct and disconnected subjects, matters or causes; the other consisting in joining in the same suit, either as complainants, or defendants, parties who are without a common interest in the subject of the litigation and have no connection with each other."

Trust Company of Fla. vs. Crider, 102 Fla. 593, 136 So. 434; Murrell vs. Peterson, 57 Fla. 480, 49 So. 31.

To render a bill multifarious for misjoinder, it must contain two or more distinct causes of action that cannot properly be joined in one bill of complaint. Mountein vs. King, 75 Fla. 12, 77 So. 630; Johnson vs. Benbow, 93 Fla. 124, 111 So. 504. In Mountein vs. King, supra, this Court quoted with approval the following:

"Frequently the fact that demands which are otherwise entirely distinct relate to the same subject-matter affords a sufficient connection to justify their union in one bill, and avoids an objection for multifariousness. * * *

"In considering the question of multifariousness the matter particularly involved is convenience in the administration of justice, and if this can be accomplished by the mode of procedure adopted, an objection for multifariousness should not be allowed.' Farrell vs. Forest Inv. Co., 73 Fla. 239, 74 So. 216."

We appreciate the full significance of this language when we consider that "multifariousness goes to convenience more than to merit." Johnson vs. Benbow, supra; Prince vs. Mahin, supra; Carlton vs. Hilliard, supra. Indeed, in the Mountein-King case this Court said:

"While a bill in equity should not contain distinct and disconnected causes of action as to which different independent decrees may be rendered, yet one defendant against whom relief is sought in every phase of the case is not prejudiced by the joinder of matters, and he cannot in general justly complain on his demurrer to the bill of complaint of having one rather than several suits brought against him."

We are in accord with appellant when it states in its brief that the complainant in one aspect of its bill sues in the character of a mortgagee, and asks for a satisfaction of the debt by a foreclosure of the mortgage as a prior lien to the three mortgages of appellant, and in

another aspect sues in the character of a statutory lien holder who seeks the establishment and enforcement of his lien in priority to the rights of appellant under its · said three mortgages.

If complainant had elected to stand upon and ask for the foreclosure of either of such liens and had omitted the allegations setting up the other lien, it could not be successfully contended that the bill is without equity. While it is true the complainant sues on distinct causes of action in different characters, the kind of relief sought in the respective aspects is similar. The Chancellor evidently concluded that he could conveniently proceed to a trial of cause on its merits and thereby avoid the possibility of two suits. No harm resulted to any of the parties by reason of the cause proceeding to a decree. While the bill was not dismissed insofar as it attempted to foreclose the mortgage, the Cóurt found that the mortgage secured only the amount that was due the contractor at the time it was executed and that such amount had been paid, but that The Allison Realty Company was entitled to a mechanic's lien, and the Chancellor entered a decree in accordance with the findings. There is no more reason why the cause should not have proceeded to a decree than there would have been if both liens had been mortgage liens, and this Court has held two causes of action, each based upon a separate mortgage could be foreclosed in the same suit. Terwilligar vs. Ballard, 64 Fla. 158, 59 So. 244; Key West Wharf & Coal Co. vs. Porter, 63 Fla. 448, 58 So. 599. See also Wiltsie on Mortgage Foreclosure, 4th Ed., Secs. 170, 501 and 502.

No error was committed· by the Court in overruling the demurrer to the bill of complaint.

We will now take up the second question propounded by the appellant. If we should hold that the lower court did not commit reversible error in decreeing that The

Allison Realty Company was entitled to a lien for labor and material, and that such lien was prior to the mortgage held by appellant, it will not be necessary to consider the cross-assignments of error.

It is conceded by appellees that if the building was completed under the contract on or prior to May 5th, 1927, the date when the consideration for the mortgages held by appellant passed and when they were delivered, though they were dated March 15th, 1927, the appellant did not acquire its mortgages, and the mortgages did not arise during the progress of the work, and appellant's mortgages are prior to the statutory lien of The Allison Realty Company. It is also conceded by appellees that if the performance of the work and the furnishing of the material in pursuance of the terms of the building contract had been completed prior to May 19, 1927, a year prior to the date when the bill of complaint was filed. The Allison Realty Company had no right to bring its bill to establish and foreclose a statutory lien because such a proceeding was barred by the statute. But it is earnestly contended by appellant that the said mortgages were not taken while the work on the building was in progress, and that suit was not brought within the time provided by statute for the enforcement of a mechanic's lien.

> "as against the owner, absolute or limited, of the property, real or personal, upon which a lien is claimed, or person deriving through his death, or purchasers or creditors with notice, the lien hereinbefore provided for shall be acquired by any person, in privity with such owner, by the performance of the labor or the furnishing of the materials. Any purchaser or creditor whose title, interest, lien or claim in or to the property shall be created, or shall arise, while the construction or repair of such property as aforesaid is in progress shall be deemed and held to be a purchaser or creditor with notice."

Paragraph 1, Section 5380, Compiled General Laws of Florida, 1927.

"When there has been no record of a notice of lien, suit to enforce lien (if it exists without such record) must be brought within twelve months from the performance of the work or the furnishing of the materials, and if there has been such record, the suit must be brought within twelve months from the time of such record."

Section 5393, Compiled General Laws of Florida, 1927.

It is conceded by The Allison Realty Company that the effective date of the mortgages held by appellant cannot be extended beyond May 6, 1927, and it does not contend that there was a proper record of a notice of lien.

If the contract was completed prior to May 19, 1927, The Allison Realty Company lost not merely its right to enfrce the lien, but lost the lien itself, because the bill of complaint to enforce the lien was not filed until May 19, 1928, which was more than twelve months from the performance of the work or the furnishing of the material. Bowery vs. Babbit, 99 Fla. 1151, 128 So. 801. Weaver-Loughridge Lumber Co. vs. Hobson, 99 Fla. 1183, 128 So. 642; Anderson vs. Dade Lbr. Co., 101 Fla. 38, 133 So. 321.

On the other hand, if work was in progress, or material was furnished on or after May 10, 1927, neither the lien nor the right to enforce it was lost, and the mortgagee under the three mortgages held by appellant took them with notice of the lien for labor and material, whether notice of such lien was placed on the public record or not. Bowery vs. Babbit, supra; People's Bank of Jacksonville vs. Va. Bridge and Iron Co., 94 Fla. 474, 113 So. 680. See also, People's Bank vs. Arbuckle, 82 Fla. 479, 90 So. 458.

If work on the building was still in progress on May 19, 1927, the Coral Gables Corporation, as mortgagee,

the assignor of appellant, took the said three mortgages with notice of the lien for labor and material.

The appellant in its brief quotes the last sentence of subdivision 2 of Section 5380 (3517), and also a part of Section 5393 (3530) Compiled General Laws of Florida, 1927, and says:

"In Section 5380 the words 'entire performance' and 'entire furnishing' appear, and in the last statute the word 'entire' is not incorporated. It seems to us, therefore, that if the Supreme Court, basing its decision in the Virginia Bridge & Iron Co. case upon section 5380, which provides for 'entire performance' has held that the furnishing of an article, trivial in character, is not sufficient to extend the time for filing notice of lien for record, then certainly a decision based upon section 5393, where the word 'entire' is not incorporated, must hold that the furnishing of such trivial article does not extend the time within which to file suit. In other words, if the Supreme Court can disregard the word 'entire' in section 5380 then it certainly can disregard 'entire performance' in section 5393, where the work 'entire' does not even appear."

It states further that it seems clear that the Virginia Bridge & Iron Co. case "has definitely laid down the rule in this State that a substantial completion is all that is necessary," and that if the building was substantially completed before May 19, 1927, the bill of The Allison Realty Company was not filed within the statutory period and the suit must fail. Since the filing of the said brief this Court handed down the decision in Bowery vs. Babbit, supra, in which case there was a controversy between a statutory lien holder and a mortgagee, the mortgagee being the complainant in the cause. The decree of the lower court contained a paragraph which reads as follows:

" 'That the building in question had been substantially completed at the time complainant's lien ac-

crued; that complainant had no notice of Bowery's (intervenor's) lien when complainant's lien accrued; and that the Bowery suit was not brought within twelve months from the completion of the work and the furnishing of materials.' "

In its treatment of the case this Court said:

"In the above-quoted paragraph of the decree, the court used the words 'that the building in question had been substantially completed at the time complainant's lien accrued.' This language implies that something remained to be done which required the use of labor or material or both to complete the building. As to whether the building was completed, there is a conflict in the evidence; that is, if we are to consider the hanging and placing of screens, putting hardware on the windows, easing up the doors, placing a medicine cabinet in the bathroom, and putting hardware on the garage doors as being necessary to the completion of the building. Having in mind such conflict in the evidence, as well as the finding of the court, we are not prepared to say that the building was not in an uncompleted state, or that it was not in progress of construction when the mortgage to the complainant was executed and delivered. The court must have concluded from the evidence that the work on the building, though only substantially completed when the mortgage was given, was completed soon after the accrual of complainant's mortgage lien, for in the same quoted paragraph, it is made to appear that the court found that the 'Bowery (intervenor's) suit was not brought within twelve months from the completion of the work and the furnishing of materials.'

\* \* \* \* \* \* \* \* \*

"If the labor upon and the furnishing of materials for the building were not finished at the time the mortgage lien accrued, construction of such building was still in progress, even though it was 'substantially completed,' provided the items furnished and the work done thereafter were in the exercise of good faith and within a reasonable time and in pursuance to the terms

of the agreement to build the house and garage. See note 35 L. R. A. (N. S.) 901. No question has been raised by the appellee as to the work which is claimed to have been in progress at the time of the giving of the mortgage being necessary to what might be termed a 'finished job,' but if such question had been raised, we would feel constrained to hold that the buildings had not been completed and that work was in progress until such materials were furnished and such work was performed."

See also Service Lumber Supply Co. vs. Cox, 98 Fla. 426, 123 So. 820. So it is in this case, if the labor upon or the furnishing of the material for the building was not finished prior to May 19, 1927, construction of such building was still in progress even though it may have been 'substantially completed,' provided the material furnished and the work done thereafter, if any, were in the exercise of good faith and within a reasonable time, in pursuance of the terms of the contract, and were necessary to a 'finished job.' See also, Service Lumber & Supply Co. vs. Cox, 98 Fla. 426, 123 So. 820.

It is true it is stated in People's Bank vs. Virginia Bridge & Iron Co., supra, that "The finishing of an article trivial in character is not sufficient to extend the time for filing notice of lien for record, where such article is furnished after the furnishing of material by the lienor has been substantially completed." It does not appear from the opinion in that case that the omitted articles which were of a trivial character were necessary to a "finished job." Furthermore, it does not appear that the question of good faith was presented to or was considered by the Court, and under the circumstances we do not feel that the dictum in the case should control the disposition of this cause. Here there is no evidence to show that "patching," touching up, and slight repair work, or the furnishing of articles of a trivial character was delayed for the purpose of extend-

ing the time for bringing the suit, or that the building had been accepted as completed.

In this case the Chancellor did not see and hear the witnesses, but his conclusion for that reason is none the less binding upon the Court, and it will not be disturbed unless it clearly appears to be erroneous. Bowery vs. Babbit, supra; Roland vs. Mathews, 98 Fla. 695, 124 So. 34; Atlantic Bank & Trust Co. vs. Segstak, 95 Fla. 606, 116 So. 267; Mock vs. Thompson, 58 Fla. 477, 50 So. 673.

It appears from the testimony of Mr. Weaver, an official of the corporation that had the contract, that the last payroll was met on April 27, 1927, and there is some justification for the inference that the labor and material was performed or furnished before May 19, 1927. However, there was before the Court the testimony of three or four witnesses that workmen were on the job until the first part of June of that year. The architect's certificate showing a completion of the contract was issued on June 4, 1927, and the assistant architect testified that about a week before the issuance of the certificate there were some men on the job checking up odds and ends, and that the contract would not have been completed "if those odds and ends had not been done."

We cannot say that it clearly appears that the decree of the lower court is erroneous. It follows that it must be affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered and ordered by the Court that the decree of the Court below be, and the same is hereby affirmed.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

ELLIS AND BROWN, J.J., dissent.