**In re Chris JENNERWEIN, Lisa Jennerwein, Debtors.**

**No. 6:03–BK–10768–KSJ.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

March 31, 2004.

L. Todd Budgen, Orlando, FL, for Debtors.

Efrain Aponte, Longwood, FL, trustee.

Houston E. Short, Winter Park, FL, Accent Pools and Spas, Inc., Kissimmee, FL, for Creditor.

*MEMORANDUM OPINION GRANTING ACCENT POOLS' MOTION FOR RELIEF FROM STAY AND DENYING DEBTORS' MOTION TO AVOID LIEN*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on January 7, 2004, on the Motion for Relief from Stay filed by Accent Pools and Spas, Inc. (Doc. No. 8) and the Amended Motion by Debtors to Declare Liens Void (Doc. No. 22). The issue raised by both motions is whether a Claim of Lien, filed by Accent Pools on January 27, 2003, was timely. If the Claim of Lien *was* timely, Accent Pools is a secured creditor holding a lien on the debtors' exempt homestead and has demonstrated sufficient cause to modify the automatic stay to permit them to return to state court to enforce their lien. However, if the Claim of Lien was *not* timely filed, the lien is not enforceable and should be avoided.

The facts are largely undisputed. On July 13, 2002, the debtors signed a contract with Accent Pools to construct a large pool at the debtors' home for a cost of $34,214. The Notice of Commencement, indicating work had started on the pool, was timely filed on July 15, 2002. Accent Pools diligently worked on the pool, completing approximately two-thirds of the job, when they learned that the debtors could not obtain financing to pay them for their services. Indeed, the debtors have made *no* payments to Accent Pools for any portion of Accent Pool's work. The total value of the services performed by Accent Pools was $27,346 at the time they stopped working on the project. At that point, the pool was not finished; however, the debtors later hired additional contractors to complete the pool. Many, if not most, of these contractors also remain unpaid.

The debtors never formally terminated the contract with Accent Pools. Nor did the debtors demonstrate that the work completed by Accent Pools was less than acceptable. Rather, the debtors simply had no money to make the payments required under the parties' contract. Eventually, Accent Pools realized the seriousness of the debtors' financial condition after they failed to pay for the installation of the pavers surrounding the pool. The pavers were installed on or about October 25, 2002, at a cost of $1,679. When the debtors were unable to pay any of the monies due for the pavers or under the parties' contract, Accent Pools understandably slowed work on the debtors' home.

On November 27, 2002, a construction supervisor for Accent Pools, Mr. Marvin Danny Teag visited the debtors' home. Mr Teag inspected the pool, the pool equipment, and the recently installed brick pavers surrounding the pool. He propped up a previously installed safety fence around the pool, made a list of all unfinished project items, removed miscellaneous debris, and left. On January 27, 2003, Accent Pools filed its Claim of Lien seeking a payment of $27,346 (Debtor's Exhibit No. 1).

The issue presented is whether Accent Pools timely filed its Claim of Lien. Under Florida law, a claim of lien is timely filed if it is filed within 90 days from the date that the last labor, services, or materials were furnished to the project. The applicable statute is Section 713.08(5) of the Florida Statutes which provides:

The claim of lien may be recorded at any time during the progress of the work or thereafter but not later than 90

days after the final furnishing of the labor or services or materials by the lienor;...The time period for recording a claim of lien shall be measured from the last day of furnishing labor, services, or materials by the lienor and shall not be measured by other standards, such as the issuance of a certificate of occupancy or the issuance of a certificate of substantial completion.

Because Florida's lien law is a creature of statute, courts must strictly construe its provisions, particularly as to time deadlines. *Wolford v. Sapp*, 448 So.2d 1113 (Fla. 1st DCA 1984). As stated above, Accent Pools filed its Claim of Lien on January 27, 2003. Thus, the applicable 90–day period begins ninety days prior to that date on October 29, 2002.

In order to fall within this 90–day time frame, Accent Pools relies on Mr. Teag's visit to the debtors' home on November 27, 2003, which was 61 days prior to the date Accent Pools' Claim of Lien was filed and within the applicable 90–day period. Accent Pools supplied no other goods, labor, or services of any kind during the 90–day period.

■ The only issue is whether Mr. Teag's sole visit accomplished the statutory requirement of supplying the final furnishing of labor, services, or materials during the relevant 90 days. In Florida, the test to determine whether labor, services, or materials were furnished is whether the work was: (i) performed in good faith; (ii) within a reasonable time; (iii) in pursuance of the terms of the contract; and, (iv) whether the work was necessary to a "finished job." *Aronson v. Keating*, 386 So.2d 822, 823 (Fla. 4th DCA 1980) (*citing Century Trust Company of Baltimore v. Allison Realty Co.*, 105 Fla. 456, 141 So. 612 (1932)). The application of this fairly straight-forward four step test is fact driven, and the facts of each construction project vary widely. While no cases have addressed the precise issue before the Court regarding what qualifies as the "final furnishing" of labor, services, or materials by a pool contractor under Florida Statute Section 713.08(5), other Florida courts have examined the four factor test under different construction projects and those cases are instructive here.

For example, in *Michnal v. Palm Coast Development, Inc.*, 842 So.2d 927, 933 (Fla. 4th DCA 2003), Florida's Fourth District Court of Appeals applied the four factor test and found that a fax discussing revisions to roof trusses sent from a contractor's office to a client constituted the furnishing of a service where the fax was: (i) "prepared and transmitted" as a part of a good faith effort to resolve outstanding construction issues; (ii) sent within a reasonable time (eleven days) after a meeting between the parties and prior to the client's termination of the contract the day after the fax was sent; (iii) directly related to the improvement of the subject property; and (iv) necessary to the finished job, where the contracted work could not continue without the client's express authorization. *Michnal*, 842 So.2d at 933. In *Michnal*, the client and the contractor were at loggerheads. The contractor merely sent a fax offering a solution to a problem. The appellate court found that this fax, alone, was sufficient to qualify as a "furnishing" of a "service" for the purposes of the limitation period.

In *In re Twelve Oaks, Ltd.*, 59 B.R. 736 (Bankr.M.D.Fla.1986), the Bankruptcy Court for the Middle District of Florida also applied the four factor test, but with the opposite result from *Michnal*. In *Twelve Oaks*, the court found that services rendered by a contractor to prevent waste of completed work and to secure a construction site were merely "preventative measures" that were not rendered in pur-

suance of the direct contract and were not "significant enough in and of themselves to warrant the court to extend the cut-off date which commences the 90–day period for filing a claim of lien." 59 B.R. at 742–43.

■ Clearly, under Florida Statute Section 713.08(5), work performed "in fulfillment of a contract . . . extends the time for filing, since the contract is not complete until the work is done." *Herpel, Inc. v. Straub Capital Corp.*, 682 So.2d 661 (Fla. 4th DCA 1997). Where the work performed is a necessary continuation of the contract work, it will be deemed a "final furnishing." *Wolford*, 448 So.2d *at* 1114; *Herpel*, 682 So.2d *at* 663 (final furnishing of mantel occurred when modified mantel was re-delivered after mantel initially tendered was rejected as non-confirming to contract for materials; contract could not be considered complete until satisfactory product delivered); *Compare Cross State Dev. Co. v. Indepco Constr. Co., Inc.*, 346 So.2d 127 (Fla. 1st DCA 1977) (mere storage of machinery at job side does not constitute furnishing of services or labor).

■ However, remedial work such as corrections or repairs completed after the job is done, or work that is not necessary to a completed contract does *not* extend the time for filing a claim of lien. Rather, any such additional work performed "is merely incidental to the executed contract." *Herpel*, 682 So.2d at 662–63; *In re Starlight Homes, Inc.* 297 B.R. 856, 860 (Bankr.M.D.Fla.2003) (remedial work does not extend the time for recording a claim of lien) (*citing Viking Builders, Inc. v. Felices*, 391 So.2d 302 (Fla. 5th DCA 1980)). In general, the "salient question" is whether the "challenged labor, services, or materials were related directly to the property, or were merely incidental to it." *Michnal v. Palm Coast Development, Inc.*,

842 So.2d 927, 933 (Fla. 4th DCA 2003) (*citing Robert M. Swedroe, Architect/Planners, A.I.A., P.A. v. First Am. Inv. Corp.*, 565 So.2d 349, 353 (Fla. 1st DCA 1990)).

Here, the debtors hired Accent Pools to construct a large custom pool at their home. Accent Pools completed two-thirds of the pool, including installing pavers around the pool on October 25, 2002. When the debtors failed to make the two necessary interim payments, Accent Pools slowed construction; however, neither party formally terminated the contract. Then, on November 27, 2002, Accent Pools sent its supervisor, Mr. Teag, to the site. Mr. Teag inspected the newly installed pavers, ascertained that a safety fence was properly in place around the pool, and made a list of all unfinished projects to be completed if the debtors made the required payments and Accent Pools was able to resume construction. However, no payments were made, and the debtors hired other contractors to finish the pool. Accent Pools filed its Claim of Lien on January 27, 2003.

The Court concludes that Mr. Teag's visit was a sufficient final furnishing of services, labor or materials, to extend the time to file Accent Pools' Claim of Lien, although the scope of services rendered admittedly is limited. By all accounts, when Mr. Teag visited the debtors' home he was acting in good faith and conducting his normal job as a construction supervisor for Accent Pools. He visited the debtors' home with one intent—to check on the status of the ·project. He made this visit within a reasonable time after the pavers were installed. The project had set dormant for approximately 30 days; however, during this brief hiatus, the parties were still attempting to find a way for the debtors to obtain financing to pay Accent Pools for their services. Moreover, Mr. Teag's visit was made in direct pursuance of the

terms of the contract; he made a list of those items that were unfinished under the contract. Without this list, Accent Pools would not have had a current schedule of the materials or services necessary to finish the job. Therefore, the Court holds that Mr. Teag's actions were directly related to the completion of the debtors' pool and were not merely incidental to the contract. As a result, Mr. Teag's visit constituted a final furnishing of services rendering Accent Pools' Claim of Lien timely filed within the applicable 90–day time period.

Therefore, the court finds that Accent Pools holds a valid secured lien encumbering the debtors' exempt homestead property. No basis to avoid the lien was demonstrated. Accordingly, the Court denies the debtors' Motion to Declare Lien Void (Doc. No. 22).

■ Conversely, the court grants Accent Pools' Motion for Relief from Stay (Doc. No. 8), although such relief likely is not absolutely needed. Certainly, no reason exists for Accent Pools to be any further delayed in enforcing their Claim of Lien. They performed their services for the debtors during the fall of 2002, and have yet to receive any payment, even though their lien was timely filed.

■ However, whether the stay even exists at this point is doubtful. The debtors received a discharge in this bankruptcy case on January 2, 2004, and pursuant to Section 362(c)(2)(C) of the Bankruptcy Code, the automatic stay is terminated as to an individual debtor upon the entry of the discharge. Moreover, because the home is exempt and the period for objecting to exemptions has passed, pursuant to Section 362(c)(1) of the Bankruptcy Code, it is unlikely that the home is property of the estate. However, in an abundance of caution, the Court will modify the automatic stay in order to allow Accent Pools to pursue its secured claim in state court. Of course, the discharge prevents Accent Pools from seeking any type of *in personam* relief against the debtors. A separate order consistent with this opinion shall be entered.