**In re TWELVE OAKS, LTD., a Florida Limited Partnership, Debtor.**

**TWELVE OAKS, LTD., a Florida Limited Partnership, Plaintiff,**

v.

**FLORIDA NATIONAL BANK, a national banking association; St. John's Wholesale Company, a/k/a St. John's Wholesale Co., Inc., a Florida corporation; Lane's Aerial Platforms and Equipment Rentals, Inc., a Florida corporation; Manning Building Supplies of Jacksonville, Inc., a Florida corporation; Michael Lee Renau; Sport Courts, Inc., a Florida corporation; Jenny Anderson, d/b/a Designer's Choice; Sears, Roebuck and Co., a New York corporation; James Jordan, d/b/a Jordan and Son Maintenance, Inc., a Florida corporation; Turner-Jones Specialty Co., Inc., a Florida corporation; McGowan's Heating and Air Conditioning, Inc., a Florida corporation; Wicke's Lumber Company, Inc., a corporation; Steven N. Larson and Joann G. Koch, a/k/a Joann G. Larson; Michael C. Williams; and J.M. Barker Company, Inc., a Florida corporation, Defendants.**

Bankruptcy No. 85–402–BK–J–GP.
Adv. No. 85–148.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 10, 1986.

Lansing J. Roy, Keystone Heights, Fla., for plaintiff.

John W. Caven, Jacksonville, Fla. for St. Johns Wholesale Co. and Sport Courts, Inc.

Steven Gutter, Fort Lauderdale, Fla., for Sears, Roebuck & Co.

Kenneth D. Hagler, St. Augustine, Fla., for Wicke's Lumber Co., Inc.

William J. Haley, Lake City, Fla., for Jenny Anderson.

John A. Meadows, Jacksonville, Fla., for Turner-Jones Specialty Co.

Jeffrey C. Regan, Jacksonville, Fla., for Florida Nat. Bank.

Wayne L. Rubinas, Ocala, Fla., for Manning Bldg. Supplies.

Gerald W. Weedon, Jacksonville, Fla., for Lane's Aerial Platforms.

Thomas Whitefield, Jacksonville, Fla., for J.M. Barker Co., Inc., Steven N. Larson, Joann G. Koch, a/k/a Joann G. Larson, Michael Lee Renau, Michael C. Williams, James Jordan, McGowan's Heating & Air Conditioning, Inc.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding was commenced by debtor, Twelve Oaks, Ltd., to determine the validity, priority, and extent of liens or interests in property of the estate, to recover a fraudulent conveyance from Florida National Bank, and to declare certain mechanics liens filed against the property of the estate invalid.

### Facts

Debtor, Twelve Oaks, Ltd., a limited partnership created under statutes of the State of Florida, was formed on July 18, 1984, for the sole purpose of constructing a 40-unit condominium project known as Twelve Oaks III Condominiums in Orange Park, Florida. Debtor has one general partner, Peter K. Hofmann; two subscribing limited partners, Phillip and Sandra Gerlach, and John and Sue Gray; and one land limited partner, P.K. Hofmann and Associates, Inc. For convenience, the parties will be designated as Florida National Bank (FNB), and James M. Barker Company, Inc. (Barker).

While the general contractor on the project was Barker, the actual manufacture of the prefabricated condominium units was subcontracted to Florida Modulars, Inc. Both Florida Modulars, Inc., and P.K. Hofmann and Associates, Inc., are affiliates of debtor in that both corporations are wholly owned and managed by Peter K. Hofmann, the general partner of debtor and his wife.

Construction of the project was funded by a $1,265,179.00 construction loan from FNB. Simultaneously with granting the loan, FNB also extended a $60,000 line of credit to Florida Modulars, Inc. Both the construction loan and line of credit were cross-defaulted and cross-collateralized in a single mortgage on debtor's only asset, the real estate on which the condominiums were to be built. Peter K. Hofmann endorsed the construction loan note as general partner of debtor and endorsed the line of credit note as president of Florida Modulars, Inc. FNB timely perfected its mortgage.

At the time of extending the construction loan, FNB required $150,000 as additional security in order to improve debtor's equity position. Instead of pledging partnership assets, the subscribing limited partners pledged their personal assets. The Gerlachs' pledged an $89,000 certificate of deposit which they physically delivered to FNB. They also pledged $16,000 in a "Florida Gold" bank account and executed a $20,000 promissory note secured by $30,000 of face value Treasury bonds registered to Phillip Gerlach. The certificate of deposit eventually matured during construction and was thereafter deposited into the Florida Gold account. The Grays' pledged a $25,000 letter of credit from Southeast Bank payable to FNB as beneficiary.

Within the year of debtor filing its petition, Florida Modulars, Inc., defaulted under the line of credit note and debtor defaulted under the construction loan note. Upon default, FNB liquidated the $150,000 of pledged collateral. FNB applied $60,904.51 to the line of credit indebtedness to extinguish that debt and applied the remaining $89,095.49 to the construction loan indebtedness.

Construction of the project came to a halt during January, 1985, when Florida Modulars, Inc., ceased all work. Thereafter in February, officials of Barker and Peter K. Hofmann met to find a way to continue the work. On February 19, 1985, Barker officially notified FNB that it was leaving the project. However, during March and April, 1985, Barker continued to furnish electrical and telephone service, maintain and provide storage and office trailers at the construction site, maintain builder's risk insurance, and at the direction of FNB supplied materials and labor to secure the work site. On May 6, 1985, Barker turned the keys to the project over to Peter K. Hofmann. Barker filed its claim of lien on June 4, 1985.

The other defendants, St. John's Wholesale Company, Lane's Aerial Platforms and Equipment Rentals, Inc., Manning Building Supplies of Jacksonville, Inc., Michael Lee Renau, Sport Courts, Inc., Jenny Anderson d/b/a Designer's Choice, Sears, Roebuck & Co., Turner-Jones Specialty Co., McGowan's Heating and Air Conditioning, Inc., Wicke's Lumber Company, Inc., James Jordan d/b/a Jordan and Son Maintenance, Inc., Steven N. Larson and Joann D. Koch a/k/a Joann D. Larson, and Michael C. Williams all provided services or materials to the subcontractor, Florida Modulars, Inc. Each filed a mechanics lien which debtor contends is defective and not enforceable against the estate.

The Court has entered a default against McGowan's Heating and Air Conditioning, Inc., James Jordan d/b/a Jordan & Son Maintenance, Michael C. Williams, Michael Lee Renau, Steven N. Larson and Joann G. Koch a/k/a Joann G. Larson for failure to file an Answer, Motion or other defensive pleading, or any response to the Complaint in this adversary proceeding.

## I. FLORIDA NATIONAL BANK
### (the Lender)

As to FNB, there are two issues before the Court: (1) whether under laws of Florida FNB has a valid mortgage on debtor's property which secures the $60,000 line of credit extended to Florida Modulars, Inc.; and (2) whether under 11 U.S.C. § 548 the setoff by FNB of the pledged collateral against the line of credit indebtedness constitutes a fraudulent transfer. On both issues the Court finds in favor of FNB.

## A. *Florida Law*

■ Debtor contends that Peter K. Hofmann lacked authority under either the Limited Partnership Agreement or Florida law to execute a mortgage on debtor's property to secure a $60,000 line of credit note extended to an unrelated entity. There is no dispute that debtor's construction loan note is validly secured by the mortgage which Peter K. Hofmann executed as general partner of debtor. Under Florida law, a general partner in a limited partnership is authorized to execute any instrument in the partnership name, including instruments affecting title to real property held by the partnership. F.S.A. § 620.09(1).

The sole general partner of debtor is Peter K. Hofmann. In the Limited Partnership Agreement, he alone was given the express authority to conduct all partnership business, to obtain financing of the project on the terms and conditions he deemed to be in the best interest of the partnership, to make secured or unsecured loans of partnership funds if such would further partnership business, to mortgage any part of partnership property and to execute all instruments which would effectuate the foregoing.[1] In addition to these specific powers, the limited partners also conferred on Peter K. Hofmann the authority to engage in any act so long as it was "permitted by law."[2] The Agreement itself represented the limited partners written consent and ratification to any legal act.[3]

The almost limitless authority conferred on Peter K. Hofmann as general partner is granted and permitted under Florida law. Section 620.09 of the Florida Statutes confirms this by granting general partners in a limited partnership the authority to engage in any act without the written consent or ratification of the limited partners so long as that act is not in contravention of the Partnership Certificate. F.S.A. § 620.-09(2)(a). The only limitation on a general partner's authority is found in Florida Statute § 620.60(2) wherein the legislature stated that a partnership could not be bound by an act that was not apparently for "usual business activity" unless all partners consent. F.S.A. § 620.60(2). See *Chandler v. Sherman*, 16 Fla. 99 (1877).

With such broad language in the Agreement, there is little doubt that Peter K. Hofmann had the express authority to mortgage debtor's property in order to promote the principal goal of the partnership, i.e., the construction of the condominiums. FNB's reliance on the language of the Agreement was reasonable in light of the interconnected objectives of both debtor and Florida Modulars, Inc.

At the outset, the Agreement states that the partnership can accomplish its objectives in its own right or through other entities. Further, the general partner can engage in other business ventures and contract with those other businesses as general partner of the partnership, so long as all dealing is done on an arm's length basis.[4]

Florida Modulars, Inc. was just the type of "other business venture" the partners contemplated. The fact that Florida Modulars, Inc. was created before debtor is irrelevant since its singular purpose was to manufacture the prefabricated condominium units for debtor. Florida Modulars, Inc., was the only subcontractor which could manufacture the condominium units within the budget and time prescriptions given the contractor. Without the use of debtor's collateral, Florida Modulars, Inc., would not have had the financing to undertake this project. Clearly, where the needs and objectives of debtor and Florida Modulars, Inc., are so closely intertwined, the apparent authority granted Peter K. Hofmann in the Agreement is sufficient to uphold the mortgage.

---

1. Twelve Oaks, Ltd., Limited Partnership Agreement, § 1.05.

2. *Id.*

3. *Id.*

4. *Id.*

■ Even if Peter K. Hofmann lacked express authority under the Agreement, debtor is estopped from denying that Peter K. Hofmann had the apparent authority to execute the mortgage. The three elements giving rise to estoppel are present in this case. See *Fidelity and Casualty Company of New York v. D.N. Morrison Const. Co.*, 116 Fla. 66, 156 So. 385, 387 (1934), *app. dism.*, 293 U.S. 534, 55 S.Ct. 348, 79 L.Ed. 642 (1935). First, at the time the mortgage was executed, Peter K. Hofmann represented to FNB that he had the authority as debtor's sole general partner to grant the mortgage. Second, FNB relied on that representation and on the express language of the Agreement when it extended the line of credit to Florida Modulars, Inc. Prior to that time, FNB had refused to extend Florida Modulars, Inc. the line of credit. Lastly, FNB changed its position based on Peter K. Hofmann's representation and extended the line of credit. The Court must do equity and estopp debtor from denying that its sole managing partner had authority to mortgage debtor's property in order to accomplish the objectives of the partnership.

On balance in light of these circumstances, it would be inequitable to accept Peter K. Hofmann's contention that he never had the authority to mortgage debtor's property when he was the person who conceived the idea of using debtor's property to secure the line of credit to Florida Modulars, Inc. No one is unfairly prejudiced by the Court upholding this mortgage. The limited partners did not participate in the decision to use debtor's property as collateral for the line of credit indebtedness, thus, they retained their limited liability. F.S.A. § 620.07. Also, the creditors of debtor were not harmed since the mortgage was duly perfected and a matter of public record.

### B. *Fraudulent Transfer*

■ Debtor asserts that the setoff of the $150,000 of pledged collateral against the $60,000 line of credit note by FNB was a fraudulent conveyance under 11 U.S.C. § 548(a)(2)(A) and (B)(ii). These sections allow the debtor-in-possession to avoid a transfer if in exchange for that transfer, debtor "received less than a reasonably equivalent value" and was left with "unreasonably small capital." 11 U.S.C. § 548(a)(2)(A) and (B)(ii). Value is defined in § 548(d)(2) as "... property, or satisfaction or securing of a present or antecedent debt of the debtor...." 11 U.S.C. § 548(d)(2)(A).

Usually in cases where a third party directly benefits from the transfer, fair consideration or reasonably equivalent value is not found. See *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir.1981). The analysis does not stop at that point, however, the Court must look further to see "what the debtor received irrespective of what any third party may have gained or lost." *In re Jamison*, 21 B.R. 380, 382 (Bkrtcy.D.Conn 1982), citing *Rubin*, supra.

At the time of the transfer, FNB held a valid cross-collateralized and cross-defaulted mortgage on debtor's property. The Court has found this mortgage valid under Florida law and debtor had not had this mortgage avoided under any other applicable statute. Accordingly, on the day of setoff, the entire mortgage was a valid debt of the debtor. The transfer, i.e., the liquidation of the pledged collateral and the application of $60,904.51 against the line of credit indebtedness, satisfied an antecedent debt of the debtor. This transfer constituted value under § 548(d)(2) of the Bankruptcy Code and since a debt of even kind was given in exhange for a value of even kind, reasonably equivalent value was received by debtor. This benefit to the estate is clear and identifiable. See *In re Burbank Generators, Inc.*, 48 B.R. 204, 207 (Bkrtcy. C.D.Calif.1985).

Debtor asserts that in hindsight no benefit was received since the project was not successful and the line of credit was used entirely by Florida Modulars, Inc., as operating capital. Debtor's argument fails to demonstrate lack of reasonably equivalent value because debtor is focusing on the speculative benefit received by debtor on

the day the mortgage was granted and not on the day setoff occurred. Debtor failed to sustain its burden of proof.

## II. MECHANICS LIEN CLAIMANTS

The issue before the Court concerning the mechanics lien claimants is whether failure to serve notice on the owner or failure to correctly designate the owner in the claim of lien prevents enforcement of the lien against the owner-debtor. Although presented with a two-fold question, the same principles of law govern.

Chapter 713 of the Florida Statutes grants materialmen and laborers lien rights in real property if certain procedural requirements are met. First, as a prerequisite to perfecting a lien, all lienors except laborers are required to serve a notice on the owner of the property "... setting forth the lienor's name and address, a description sufficient for identification of the real property, and the nature of the services or materials furnished or to be furnished." F.S.A. § 713.06(2)(a). In addition to serving the owner, the materialman or sub-subcontractor must also serve a copy of the notice on the contractor and subcontractor if appropriate. Failure to serve the notice acts as a "complete defense to enforcement of a lien by any person." *Id.* Second, the lienor must record a claim of lien which specifically states the name and address of the lienor, the person with whom the lienor contracted, the labor, services or materials furnished, a description of the real property involved, the name of the owner, the time the first and last item of materials or service were furnished, the amount unpaid the lienor, and if the lienor is not in privity with the owner then the date and method of service of the notice to owner. F.S.A. § 713.08(1).

### A. *Notice*

■ The purpose of the notice requirement is "... to protect an owner from the possibility of paying over to his contractor sums which ought to go to a subcontractor who remains unpaid." *Boux v. East Hillsborough Apartments*, 218 So.2d 202 (Fla. App. 2 Dist.1969). Where that purpose is

fulfilled, the Florida Courts have waived the technical requirements of Florida Statute § 713.06. *See Symons Corp. v. Tartan-Lavers Delray Beach*, 456 So.2d 1254 (Fla.App. 4 Dist.1984) [Lien not vitiated where owner not prejudiced and error was honest mistake]; *Broward Atlantic Plumbing Co. v. R.L.P., Inc.*, 402 So.2d 464 (Fla.App. 4 Dist.1981) [No possibility of double payment where three owners and principals of contractor were identical]; *George J. Motz Construction Corp. v. Coral Pines, Inc.*, 232 So.2d 441 (Fla.App. 4 Dist.1970) [No prejudice where owner had implied actual knowledge]; *Boux*, supra. *Cf. Bishop v. James A. Knowles, Inc.*, 292 So.2d 415 (Fla.App. 2 Dist.1974) [Identity between owner and contractor too slight to justify imposition of a lien where funds were already disbursed by owner].

In *Boux*, the owner, East Hillsborough Apartments, Inc., was wholly owned by the contractor, Su-Jak Enterprises, Inc., which had contracted directly with the plasterer, Boux. The Court held that failure to file notice of lien to owner was not ground for dismissal where the same persons were officers of both the owner-corporation and the contractor-corporation.

In this matter, it was Peter K. Hofmann, the general partner of debtor, who contracted with the mechanics lien claimants in his capacity as president of Florida Modulars, Inc. If notice was served, it was served on Peter K. Hofmann, Florida Modulars, Inc., or Peter K. Hofmann and Associates, Inc. Regardless of who received notice, Peter K. Hofmann was aware of the claim. This actual knowledge on the part of debtor's only general partner would preclude any possibility of double payment to these claimants. Clearly, *Boux* controls.

### B. *Claim of Lien*

Only "substantial" compliance with the requirements in Florida Statute § 713.08 is required. A trial court may in its discretion overlook any omission or error in the claim of lien and enforce the lien if the one against whom the lien is being enforced has not been adversely affected. F.S.A. § 713.08(4)(a). *See* also *George J. Motz*

*Construction Corp. v. Coral Pines, Inc.,* supra.

■ Turner-Jones Specialty Co. filed its claim of lien in the name of P.K. Hofmann and Associates, and Lane's Aerial Platforms and Equipment Rentals, Inc., filed its claim of lien in the name of P.K. Hofmann. While the names P.K. Hofmann and Associates and P.K. Hofmann are not even similar to debtor's name, these names are those of the land limited partner and general partner of debtor. Filing a claim of lien under either of these names was sufficient to apprise debtor of the claim of lien. There is no question that debtor had actual knowledge of the lien. This liberal reading of Florida Statute § 713.08 reasonably and fairly carries out the remedial intent of the statute when the debtor/owner is not adversely affected by the error.

The mechanics lien claimants' failure to serve notice on the debtor or to correctly designate debtor as owner in the claim of lien did not prejudice debtor. Debtor, through its general partner, Peter K. Hofmann, had actual knowledge of each of the claims.

### III. JAMES M. BARKER COMPANY, INC. (the Contractor)

■ The sole issue before the Court concerning James M. Barker Company, Inc., is whether this contractor timely filed its claim of lien within ninety days after the final furnishing of services in accordance with Florida Statute § 713.08(5).

A contractor in privity with the owner is granted a lien on the improved real property in the amount owed him for labor, services, materials or other items furnished in accordance with the direct contract. F.S.A. § 713.05. In order for the lien to arise, however, the contractor must record a claim of lien " ... at any time during the progress of the work or thereafter but not later than ninety days after the final furnishing of the labor or services or materials by the lienor." F.S.A. § 713.08(5).

Barker recorded its claim of lien on June 4, 1985. In order for this claim of lien to give rise to a valid lien, Barker must have furnished its final services between March 6 and June 4, 1985. A dispute concerning the date final services were provided by Barker arises because Barker ceased all work on the project on February 19, 1985, but thereafter secured the premises at the request of the lender, FNB.

The question of when the final furnishing of services was provided is a question of fact to be determined by this Court. See *Wolford v. Sapp,* 448 So.2d 1113 (Fla.App. 1 Dist.1984). The test espoused by the Florida courts is " ... whether the work was done in good faith, within a reasonable time, in pursuance of the terms of the contract, and whether it was necessary to a 'finished job.' " *Id.* at 1114, citing, *Aronson v. Keating,* 386 So.2d 822 (Fla.App. 4 Dist.1980).

Between March and June, Barker did provide various services which secured the construction site and which kept the offices operable in case construction resumed. The fact that these services did not add value to the real property is not determinative if the services were provided in accordance with the direct contract. See *Morris and Esher, Inc. v. Olympia Enterprises, Inc.,* 200 So.2d 579 (Fla.App. 3 Dist.1967); *E & E Electric Co. v. Gold Coast 72nd Street Diner, Inc.,* 116 So.2d 660 (Fla.App. 3 Dist.1959). The Court finds that the services provided by Barker after February 19, 1985, were not in accordance with the direct contract and that the services fail to satisfy the requirements of the final furnishing of services test.

Even though the work performed was not pursuant to the direct contract, the Court could still have found that the services met the final furnishing of services test if the services had been "substantial." Substantiality in this context is determined by comparing the additional work done versus the direct contract work. *See Viking Builders, Inc. v. Felices,* 391 So.2d 302 (Fla.App. 5 Dist.1980); *Finney v. Barber Block Plant, Inc.,* 183 So.2d 698 (Fla.App. 2 Dist.1966). The measures taken by Barker to prevent waste of the already completed work and to secure the construction site

are insubstantial in comparison to the services required under the direct contract. These preventive measures are not significant enough in and of themselves to warrant the Court extending the cut-off date which commences the 90-day period for filing a claim of lien. Barker knew or should have known that the timely filing of the claim of lien was essential. Its failure requires the Court to find that it does not have a valid lien.

Upon these findings, a final judgment will be separately entered. The Court retains jurisdiction to determine claims and adjudicates any objections thereto.

### FINAL JUDGMENT

In accordance with the Memorandum Opinion separately entered, the Court finds:

1. Plaintiff has failed to sustain its burden of proof so as to invalidate the mortgage held by Florida National Bank on debtor's real property under Florida law or to establish a fraudulent transfer to Florida National Bank under 11 U.S.C. § 548.

2. Florida National Bank has a valid and enforceable mortgage on debtor's real property and is entitled to such priority as may be established from the public records of Clay County, Florida.

3. Plaintiff has failed to sustain its burden of proof so as to void the mechanics lien claims against debtor's real property.

4. St. John's Wholesale Company; Lane's Aerial Platforms and Equipment Rentals, Inc.; Manning Building Supplies of Jacksonville, Inc.; Michael Lee Renau; Sport Courts, Inc.; Jenny Anderson, d/b/a Designer's Choice; Sears, Roebuck & Co.; Turner-Jones Specialty Co.; McGowan's Heating and Air Conditioning, Inc.; Wicke's Lumber Company, Inc.; James Jordan, d/b/a Jordan and Son Maintenance, Inc.; Steven N. Larson and Joann D. Koch, a/k/a Joann D. Larson; and Michael C. Williams hold valid and enforceable claims of liens under Chapter 713 of the Florida Statutes against debtor's real property and are entitled to such priority as may be established from the public records of Clay County, Florida.

5. Plaintiff has sustained its burden of proof to void the lien of J.M. Barker Company, Inc., against debtor's real property.

Accordingly, it is

ORDERED as follows:

A. Final Judgment is entered against plaintiff and in favor of defendants, Florida National Bank; St. John's Wholesale Company; Lane's Aerial Platforms and Equipment Rentals, Inc.; Manning Building Supplies of Jacksonville, Inc.; Michael Lee Renau; Sport Courts, Inc.; Jenny Anderson, d/b/a Designer's Choice; Sears, Roebuck & Co.; Turner-Jones Specialty Co.; McGowan's Heating and Air Conditioning, Inc.; Wicke's Lumber Company, Inc.; James Jordan, d/b/a Jordan and Son Maintenance, Inc.; Steven N. Larson and Joann D. Koch, a/k/a Joann D. Larson; and Michael C. Williams. This action is dismissed as to these defendants with prejudice.

2. Final judgment is entered in favor of plaintiff and against defendant, James M. Barker Company, Inc. The claim of lien held by James M. Barker Company, Inc., is declared void. Defendant, James M. Barker Company, Inc., holds only an unsecured claim.