**In re WEST TECH, LTD.**

**WEST TECH, LTD., Plaintiff,**

v.

**BOATMEN'S FIRST NATIONAL BANK OF KANSAS CITY, N.A., Defendant.**

**Bankruptcy No. 87–000658–1–11.**
**Adv. No. 87–0365–1–11.**

United States Bankruptcy Court,
W.D. Missouri.

June 3, 1988.

Timothy Sear, Polsinelli, White, Vardeman & Shalton, Kansas City, Mo., for plaintiff.

William T. Smith, III and D. Kaye Summers, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendant.

## FINDING OF FACTS AND CONCLUSIONS OF LAW

KAREN M. SEE, Bankruptcy Judge.

Based upon the Stipulations of the parties, the briefs filed and the arguments of counsel, the Court hereby makes the following Findings of Fact:

1. West Tech, Ltd. is a Florida limited partnership.

2. Pursuant to the Partnership Agreement dated December 29, 1983, Ward Parkway Corporation is the General Partner of West Tech, Ltd. Exhibit A.

3. Ward Parkway Corporation is a wholly-owned subsidiary of Kroh Brothers Development Company ("KBDC").

4. The sole business of West Tech is the ownership and operation of an office building in Tampa, Florida named "Anchor Place".

5. On or about December 17, 1985, John A. Kroh, Jr., President of Ward Parkway Corporation, the General Partner of West Tech, submitted to Boatmen's a loan request in the name of West Tech for $1,300,-000. Exhibit C. The loan request showed that the partnership property was presently 49% occupied, but that the remaining office space had been leased for occupancy, in 1986. The loan was to be for a term of four years and amortized quarterly. The loan request projected income at full occupancy of $1,381,079, expenses of $332,857, debt servince on prior mortgage of $780,-000, leaving a net cash flow of $258,222.

6. On or about December 18, 1985, Boatmen's generated Loan Approval forms in regard to the Loan Request. Exhibit D. The loan approval forms showed that Boatmen's was to be secured by an unrecorded second mortgage and the guarantee of KBDC. Boatmen's appears from the form to have believed that the purpose of the loan was "to repurchase certain partnership interests". Boatmen's made similar calculations as set out above regarding net cash flow after expenses and the prior mortgage and arrived at $209,764. Boatmen's then calculated that the debt service for principal only on the loan would be $325,000, leaving a negative cash flow of $115,236 per year.

The forms show that the loan was approved by C. Ted McCarter, President, Chairman of The Board and Chief Executive Officer of Boatmen's on December 18, 1985.

7. On or about January 3, 1986, John A. Kroh, Jr. as President of Ward Parkway Corporation, the General Partner of West Tech, executed a Partnership Resolution. Exhibit H. The Resolution, among other things, authorized Boatmen's to open an account in the name of West Tech, Ltd., and to deposit the funds of West Tech, Ltd. into that account.

8. On January 3, 1986, a Promissory Note in the amount of $1,300,000 was executed by Jacob Mondschein, Controller of KBDC, as Vice President of Ward Parkway Corporation, in the name of West Tech, in favor of Boatmen's. Exhibit E.

9. On January 3, 1986, KBDC executed a Guarantee of the obligation underlying the Note, in favor of Boatmen's. Exhibit F.

10. On January 3, 1986, John A. Kroh, Jr., as President of Ward Parkway Corp., in the name of West Tech, executed a Mortgage in favor of Boatmen's relating to Anchor Place. Exhibit G.

11. On or about January 3, 1986, the proceeds under the Note were credited to an account of KBDC at Boatmen's pursuant to the instructions of Jacob D. Mondschein. Exhibit I.

12. At no time prior to the execution of the Note and disbursement of the proceeds did Boatmen's review the Partnership Agreement.

13. At no time prior to the time of the loan request, or after did West Tech repurchase a partnership interest of any partner of West Tech.

14. At no time was a West Tech account opened at Boatmen's.

15. The loan proceeds were never placed in a West Tech account.

16. There is no record of the loan proceeds being used for any expenditure made on behalf of West Tech.

17. At no time were the limited partners of West Tech ever consulted regarding the Loan, or ever approved the Loan.

18. At no time prior to, or after the commencement of this bankruptcy proceeding has Boatmen's recorded the Mortgage.

19. Deposition testimony of Jacob D. Mondschein, former controller of KBDC and Vice President of WPC, admitted without objection, demonstrated:

    (a) It was common for KBDC to use partnerships with which it was affiliated to borrow the equity of properties owned by the limited partnerships for KBDC's own purposes.

    (b) It would have been very common for the purpose of the Boatmen's loan to have been to supply working capital to KBDC.

    (c) Mondschein was not aware of the proceeds of the loan being used for any purpose of West Tech.

    (d) The proceeds of the loan were probably used for the working capital of any Kroh entity.

    (e) Mondschein was not aware of any specific need for funds by West Tech at the time of the loan.

20. According to the terms of the Partnership Agreement, WPC was required to fund any cash shortfalls to West Tech under its guaranty against operating deficits. The partnership agreement provided that WPC was restrained from encumbering the property with any indebtedness unless it was "reasonably related to the achievement of the purposes of the Partnership" and "done in good faith and represents the best interest of the Partnership."

21. The Partnership Agreement prohibited WPC from commingling partnership funds with that of any other entity. The Partnership Agreement provided that WPC could not make a capital expenditure in excess of $200,000 without approval of 51% of the limited partners.

22. Partnership Agreement provided that all limited partners combined had paid $850,000 for their limited partnership interest. The Partnership Agreement shows that WPC paid $44,237 for its general partner interest.

23. C. Ted McCarter, chairman, president and chief executive officer of Boatmen's, was the person who received the loan requests on behalf of Boatmen's and was the officer of the Bank directly responsible for the processing and approval of this loan request.

24. Mr. McCarter testified that he was a Kroh Brothers investor.

25. Mr. McCarter testified that Boatmen's use of term "to repurchase certain partnership interest" was how the bank referred to a "turn-around". In a "turn-around" Kroh Brothers would borrow the money on the equity of the limited partnership property and pay-out existing partners, usually bringing in a new set of limited partners."

26. McCarter also testified that he knew that the general partner could not borrow money in the name of the partnership for a non-partnership purpose.

*Conclusions of Law*

Based upon the foregoing Findings of Fact, the Court makes the following Conclusions of Law:

1. The Partnership Agreement provides that the Agreement shall be governing by and construed in accordance with the laws of the State of Florida.

2. The parties have stipulated and agreed that Boatmen's First National Bank did not record the mortgage it held, that mortgage being unperfected at the date of filing of the bankruptcy proceeding, and that the mortgage should be avoided, pursuant to 11 U.S.C. § 544.

3. The remaining issue in this case is whether Boatmen's may recover upon the subject promissory note. This issue turns upon the questions of whether WPC had authority, actual or apparent, to execute the Boatmen's Note in the name of the limited partnership and therefore bind the limited partnership, and second, whether there was consideration to the limited partnership for the execution of the note.

4. A general partner's actual authority may be derived from statutory law, express provisions of the Partnership Agreement or the explicit direction of other partners. *Baker v. McCue–Moyle Dev. Co.*, 695 S.W.2d 906, 911 (Mo.App.1984).

5. The parties stipulate that there was no explicit direction of other partners for the execution of Boatmen's Note.

6. Under the Partnership Agreement, there was no "actual authority" for WPC to execute the Boatmen's note. The Boatmen's note and the placement of the proceeds of the loan in a KBDC account violated the Partnership Agreement in the following ways:

(a) The Boatmen's loan was not to further a "partnership purpose". There was no evidence that the Partnership was in any need for additional capital. Further, if West Tech required additional funds, Section 9.10 of the Partnership Agreement specifically provided that WPC was to furnish those funds to the Partnership.

(b) Entering into a loan transaction which would render the Partnership insolvent cannot be said to be for a "partnership purpose". The loan request, on its face, shows that after payment of the prior mortgage, the net cash flow available to the Partnership to pay Boatmen's was $258,222. The Note shows that the debt service required under the Boatmen's Note was four-quarterly installments of $81,250, plus interest, totalling $325,000, plus interest, per year. Even at full occupancy there would be a deficit of $66,778, plus interest per year to pay the Boatmen's Note.

(c) WPC was restrained by the Partnership Agreement from encumbering the property with any indebtedness unless it was "reasonably related to the achievement of the purposes of the Partnership" and "done in good faith and represents the best interest of the Partnership". There was no evidence that any of the proceeds of the Boatmen's loan were used for the benefit of the Partnership. Rather, the evidence showed that the proceeds were deposited for the use of KBDC.

(d) The Partnership Agreement specifically prohibited the placement of the proceeds of the Boatmen's Note into any account other than a West Tech Partnership account.

7. Based upon the foregoing, the Court holds that there was no "actual authority" for WPC to execute the Boatmen's Note on behalf of the Partnership.

8. The limited partnership can then be bound by WPC's execution of the Note only if there was "apparent authority" upon which Boatmen's relied.

9. Florida law provides that "apparent authority" does not arise from the subjective understanding of the person dealing with the purported agent, nor from appearance created by the purported agent himself; instead, "apparent authority" exists only where the principal creates the appearance of an agency relationship. *Spence et ux v. Gerson*, 483 So.2d 775 (Fla.App. 3rd Dist.1986), review denied 492 So.2d 1334. Authority is the manifestation to a third person by one person that another is his agent. In a partnership relationship, it arises from some conduct, statement or circumstance of another person which reasonably leads a third person to believe the acting partner has the authority to act for the partnership. *Baker v. McCue–Moyle Dev. Co.*, 695 S.W.2d 906–11 (Mo.App.1984).

10. For Boatmen's to rely on the "apparent authority" of WPC, Boatmen's must show that "the circumstances are [not] such as to put them on inquiry" that the agent has or might be breaching his duties to his principal. *General Motors Acceptance Corporation v. Lynche Build-*

*ing Corporation,* 118 Fla. 2, 159 So. 785 (Fla.1935).

11. In this case, the circumstances were such that Boatmen's should have been on notice that WPC was or might be breaching its duties to the Partnership.

12. Boatmen's was on notice of the following facts:

(a) Boatmen's own documents show that Boatmen's believed that the loan was to fund a buy-out of the limited partners. Boatmen's should have inquired as to who was acquiring the partnership interests, and why the loan was not being made to the party acquiring the partnership interests, rather than the limited partnership itself.

(b) Boatmen's own documents revealed that this loan would render the Partnership insolvent. Boatmen's documents projected a shortfall of at least $115,236 per year, plus interest, over the four year term of the loan.

(c) Boatmen's own documents evidence authority to deposit the partnership funds into a partnership account to be opened at Boatmen's. Yet Boatmen's deposited the proceeds into a KBDC account.

(d) Boatmen's was aware that they were taking an unrecorded mortgage as security for this loan.

13. All the above facts should have led Boatmen's to inquire as to whether WPC was breaching its duties to West Tech, Ltd. by entering into the subject loan.

14. Under Florida law, acts of an agent which are neither appropriate to nor within the customs appertaining to the particular business in which the partners engage, will not bind the partnership. *Chandler v. Sherman,* 16 Fla. 99, 111 (Fla.1877).

15. Boatmen's was on notice that the commingling of the Partnership funds with funds of KBD, the buy-out of limited partnership interest and borrowing funds in an amount which would make the partnership insolvent was neither appropriate to nor within the customs appertaining to the particular business of West Tech.

16. Under Florida bankruptcy law, there is even a question of whether there can be any "apparent authority" where the party dealing with the general partner (like Boatmen's) does not review the Partnership Agreement. *In Re Twelve Oaks Limited,* 59 B.R. 736 (Bankr.Md.Fla.1986), the Court stated that three elements are required in order to create "apparent authority" to execute a mortgage. First, the general partner made a representation and authority to grant the mortgage. Second, that the bank relied upon a representation and on the *express language of the Agreement* when it extended credit (emphasis added). Thirdly, that the bank changed its position based upon the representation. *Id.* at 740.

However, even without reliance upon *Twelve Oaks,* Florida law controls the issue of authority. Fla.Stat. § 620.60 provides that "an act of a partner that is not apparently for carrying on the business of the Partnership in the usual way does not bind the Partnership unless authorized by the other partners." Without regard to the provisions of the Partnership Agreement, Boatmen's was on notice as to the improper commingling of partnership funds, the improper purpose of the loan, and was also aware of the facts that the loan provisions would render this partnership insolvent. None of these three items can be said to be "for apparently carrying on the business of the Partnership in the usual way".

17. Concluding that WPC's signature on the Note was not authorized, the signature of WPC operates only as the signature of WPC and not of the partnership. Fla. Stat. § 673.3–404(1) (1977).

18. At oral argument plaintiff raised the issue of lack of consideration to the partnership on this loan. The argument was the first point at which this issue had been raised. There was no objection to the raising of this issue and the Court therefore finds that the pleadings are deemed amended to conform to the evidence and arguments.

19. At hearing there was some dispute over who had the burden of proof as to consideration for the Boatmen's note. Despite the fact that the note is not a negotiable instrument, the Court finds, at the very least, West Tech rebutted the presumption of consideration by showing that the proceeds of the loan were deposited into a KBDC account and that despite the fact that some of the funds could be argued to have been spent for the benefit of West Tech, the evidence also showed that WPC had its own obligation to fund any needs of the Partnership. Boatmen's either having the burden of proof of consideration or relying upon a presumption of consideration was unable to prove consideration or come forward with evidence of consideration after the presumption was rebutted. Therefore the Court concludes that there was no consideration to the partnership for the Note.

20. Balancing the equities of this case, it is clear that Boatmen's was looking to other entities for repayment of this loan at the time the loan was approved and the Note executed. Boatmen's was on actual notice that the Partnership could not repay this loan and further took an unrecorded mortgage on the partnership property. The taking of an unrecorded mortgage indicates an attempt not to bind this limited partnership. Rather, Boatmen's took a guaranty from KBDC and deposited the funds into a KBDC account Based upon these facts the Court finds that Boatmen's was looking to KBDC to repay this loan.

### ORDER

Based upon the foregoing Findings of Fact and Conclusions of Law, the Court hereby

ORDERS, ADJUDGES AND DECREES that plaintiffs have no obligation to Boatmen's First National Bank under the subject Promissory Note and the claim is disallowed; and

FURTHER ORDERS, ADJUDGES AND DECREES that the mortgage given Boatmen's is avoided as being unperfected pursuant to 11 U.S.C. § 544.