JOHN R. GIBSON, Circuit Judge.
 

 Boatmen’s First National Bank of Kansas City, N.A. appeals from a district court judgment, 104 B.R. 181, affirming the bankruptcy court, 104 B.R. 176, in rejecting Boatmen’s claim, based on a promissory note executed by Ward Parkway Development Company as a general partner of West Tech, Ltd. The bankruptcy court found that Ward Parkway had no actual authority to execute the note on behalf of West Tech and that, because the circumstances were such to put the bank on inquiry that Ward Parkway might be breaching its duties to West Tech, any claim of apparent authority failed. Boatmen’s argues on appeal that West Tech failed to prove the loan was not made for partnership purposes, that Ward Parkway had “actual and apparent authority to bind West Tech,” and that Boatmen’s is not liable
 
 *324
 
 under the Uniform Fiduciaries Act. We affirm the judgment of the district court.
 
 [1]
 

 Ward Parkway is a wholly-owned subsidiary of Kroh Brothers Development Company and was the general partner of West Tech. John A. Kroh, Jr., President of Ward Parkway, submitted a loan application to Boatmen’s in the name of West Tech for $1,300,000. The loan was approved. A partnership resolution of West Tech, executed by Kroh, authorized Boatmen’s to open an account in the name of West Tech and to deposit funds in that account. Kroh Brothers executed a guarantee of the note. After the note was ■ executed, the funds were paid into the account of Kroh Brothers at Boatmen’s pursuant to instructions of Jacob D. Mondsh-ein, who executed the note as Vice President of Ward Parkway. Mondshein gave a handwritten memorandum to Boatmen’s stating that the funds should be deposited to West Tech c/o Kroh Brothers, and specifying the account number of Kroh Brothers. The bankruptcy court found that no West Tech account was opened at Boatmen’s, no loan proceeds placed in such an account, and that there was no record of the loan proceeds being used for expenditures on behalf of West Tech. Although a mortgage secured the loan, it was never recorded.
 

 The bankruptcy court further found that it was common for Kroh Brothers to use partnerships with which it was affiliated to borrow on the equity of properties owned by the limited partnerships. Thus, loans of the sort made by Boatmen’s were typically used to supply capital to Kroh Brothers, and the loan proceeds were probably used for this purpose. Mondshein did not believe that the loan proceeds were used for any purpose of West Tech. He also knew of no specific need for funds by West Tech at the time of the loan.
 

 C. Ted McCarter, Chairman, President and Chief Executive Officer of Boatmen’s, received Kroh’s loan request and was responsible for processing and approving it. The loan approval forms showed the purpose of the loan was “to repurchase certain partnership interests.” Boatmen’s calculations showed that the debt service for principal only would render West Tech insolvent, saddling it with a negative cash flow of about $115,000 per year. McCarter testified that in transactions such as these, Kroh Brothers would borrow money on the equity of the partnership property and pay out existing partners, usually bringing in new partners. The bankruptcy court found that McCarter knew that Ward Parkway could not borrow money in the name of the partnership for nonpartnership purposes, and found that McCarter was a Kroh investor.
 

 The bankruptcy court concluded that under the partnership agreement Ward Parkway had no actual authority to execute the note, and that the execution of the note and placement of proceeds in the Kroh Brothers account violated the partnership agreement in that the loan did not further a partnership purpose. The loan transaction would render the partnership insolvent, and none of the loan proceeds were to be used for the benefit of the partnership. Instead the proceeds were deposited into the Kroh Brothers account, despite the fact that the partnership agreement specifically prohibited placement of the proceeds in any account other than the West Tech partnership account.
 

 The bankruptcy court then turned to the issue of whether Boatmen’s relied on Ward Parkway’s apparent authority to bind West Tech, and whether the circumstances were such as to put Boatmen’s on inquiry that Ward Parkway might be breaching its duties to West Tech. The bankruptcy court found that Boatmen’s was on notice of this possible breach. Boatmen’s documents revealed that it believed the loan was to further the buy-out of limited partners, and that the loan would render West Tech insolvent because of a yearly $115,000 shortfall. The documents also contained evidence that Ward Parkway only had au
 
 *325
 
 thority to deposit the loan funds in West Tech’s account, but the money was instead deposited into the Kroh Brothers account. Boatmen’s was aware that it was taking an unrecorded mortgage as security for the loan, and was on notice that West Tech’s funds were commingled with those of Kroh Brothers.
 

 Looking to Florida law, the bankruptcy court held that since Boatmen’s was on notice from the improper commingling of partnership funds, the improper purpose of the loan, the fact that the partnership would become insolvent, and the lack of consideration, Fla.Stat. § 620.60(2) (1987) would apply, and West Tech would not be bound unless the acts were authorized by the other partners. Because Ward Parkway’s signature on the note was not authorized, it operated only to bind that corporation and not West Tech. The bankruptcy court further concluded that Boatmen’s was looking to entities other than West Tech for repayment of the loan at the time it was approved and the note executed.
 

 Boatmen’s argues that there was no proof that the loan was for a nonpartnership purpose and that there was actual and apparent authority in Ward Parkway to execute the note for the partnership. Both parties also claim that the burden of proof was inappropriately placed.
 

 The question of the shifting of burdens as between claimant and debtor does not affect our conclusion, as the burden of persuasion remains on the plaintiff to prove his claim by a preponderance of the evidence.
 
 See In re Fidelity Holding Co.,
 
 837 F.2d 696, 697-98 (5th Cir.1988). Although Boatmen’s argues that there was no evidence supporting West Tech’s claim that the loan was for nonpartnership purposes, the stipulated facts and those found by the bankruptcy judge overwhelmingly demonstrate that the loan was for nonpart-nership purposes. Boatmen’s further argues that the partnership agreement expressly authorizes third persons to rely on the authority of the general partner. However, the bankruptcy court found that Boatmen’s did not review the partnership agreement before disbursement of the loan proceeds. In any event, as the bankruptcy court observed, the partnership agreement created no actual authority for Ward Parkway to execute the note, and deposit of the funds in the Kroh Brothers account violated the agreement. Boatmen’s reliance on the partnership agreement is therefore precluded.
 

 Further, Fla.Stat. § 620.60(2) provides that “[a]n act of a partner that is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners.” Since Boatmen’s was on notice as to Ward Parkway’s possible breach of its duties to West Tech, authorization by the other partners was required and, as found by the bankruptcy court, there was no authorization. The other arguments advanced by Boatmen’s are equally lacking in merit. We are not convinced that the bankruptcy court or the district court erred in any respect.
 

 We affirm the judgment of the district court.
 

 [1]
 

 . The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, affirming the decision of the Honorable Karen M. See, United States Bankruptcy Judge for the Western District of Missouri.