In the Matter of AUTOWORLD ENTERPRISES, Debtor.

PAVETTI AND FREEMAN, Movant,

v.

AUTOWORLD ENTERPRISES, Martin W. Hoffman, Trustee, Respondents.

Bankruptcy No. 2-90-00968.
Motion No. 2-91-648M.

United States Bankruptcy Court,
D. Connecticut.

Aug. 28, 1991.

Lawrence K. Greenberg, Greenberg, Steenburg and Parenteau, P.C., New London, Conn., for Pavetti and Freeman, movant.

Martin W. Hoffman, Hartford, Conn., for trustee-respondent.

## MEMORANDUM OF DECISION RE: MOTION FOR RELIEF FROM STAY TO FORECLOSE A MORTGAGE

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

#### ISSUES

Pavetti and Freeman, a Connecticut general partnership and the debtor's former law firm (P & F), requests relief from the automatic stay in order to foreclose a pre-petition mortgage which the debtor granted it on property of the estate. Martin W. Hoffman, trustee of the debtor's chapter 7 estate, opposes P & F's motion contending that (1) the mortgage lacks consideration, (2) its execution was unauthorized, and (3) that the mortgage is unenforceable as a prohibited business transaction between lawyer and client. The trustee concedes that if the mortgage is valid, the debtor's estate does not have equity in the mort-

**2**

gaged property. *See* Bankr.Code § 362(d)(2).

## II.

## BACKGROUND

Autoworld Enterprises, the debtor, a Connecticut limited partnership formed in 1978, filed a chapter 11 petition on May 18, 1990. The court converted the case to one under chapter 7 on July 12, 1990. Joseph M. Caldrello (Caldrello) was the debtor's sole general partner. The debtor holds all the issued corporate stock of two automobile dealerships—Autoworld, Inc. and L & W Porsche–Audi, Inc. Caldrello and the debtor's four limited partners were also the majority stockholders of T.N.M. Lathrop, Inc., a third automobile dealership. Caldrello owns the corporate shares of two additional automobile dealerships—Auto City, Inc. and Caldrello Motor Group, Inc. The operating businesses of the Connecticut-based automobile dealerships were located on properties owned by the debtor. They paid rents to the debtor which, in part, were utilized to keep the debtor's mortgages current. Caldrello was in complete control of the management of all six entities.

P & F for many years had done all of the legal work for the Caldrello-related entities. On February 14, 1989, the five automobile dealerships owed P & F a total of $89,111.07 for past-due legal services as follows: Auto City, Inc. ($2,516.23); Autoworld, Inc. ($9,845.10); Caldrello Motor Group, Inc. ($13,588.96); T.N.M. Lathrop, Inc. ($60,279.03); L & W Porsche–Audi, Inc. ($2,881.75). These companies had frequently cross-guaranteed each other's obligations to creditors. After discussing the build-up of the unpaid legal fees, Caldrello agreed with P & F that each of the five automobile dealerships would execute promissory notes payable on demand with interest at twelve percent per annum for their individual indebtedness and that the debtor would guarantee payment of these notes with the guarantee to be secured by

a mortgage on the debtor's one-half interest in properties known as 83 Huntington Street and 42 Meridian Street, New London, Connecticut. The parties decided on this procedure in order not to further encumber assets of the automobile dealerships then being considered for debt restructuring.[1] All promissory notes, the guarantee and the mortgage were dated and executed on February 14, 1989 by Caldrello at the P & F law office.

Both Attorney Francis Pavetti and Attorney Jane Freeman testified at trial that in return for receiving the debtor's secured guarantee of the promissory notes, they intended to and agreed to forbear for a reasonable time from enforcing their right to payment of the notes. No payments were ever made on the notes.

## III.

## DISCUSSION

### A.

### *Lack of Consideration*

■ The debtor's guarantee of payment of the notes held by P & F includes the following recitals:

> WHEREAS, the Creditor has agreed to forbear on the enforcement of payment of said indebtedness from the Debtor on the condition that Autoworld Enterprises ... guarantee payment of said indebtedness, and;
>
> WHEREAS, it is of the benefit to the Guarantor that the Creditor forbear on enforcement of the collection of said indebtedness;
>
> NOW THEREFORE, in consideration of One Dollar ($1.00) ... and the forbearance by the Creditor as aforesaid, the Guarantor promises ... all sums shall be promptly paid when due....

The trustee argues that the debtor received no consideration for the guarantee because "there is nothing in the alleged Guaranty which suggests that there was *any* time

---

1. Auto City, Inc., Caldrello Motor Group, Inc. and T.N.M. Lathrop, Inc. filed bankruptcy peti-     tions in October 1990.

period of forbearance, whether specific or just generally 'reasonable', that was agreed to by the Movant." Trustee Memorandum at 8.

This contention of the trustee is unsustainable under long-settled Connecticut law. In *Elton v. Johnson*, 16 Conn. 253, 259–60 (1844), the court ruled:

[T]his testimony clearly conduces to prove, that the plaintiff agreed to forbear for some time; and that such forbearance was the consideration of the defendant's guaranty; but that there was no agreement to wait any specified time. The legal construction of such an agreement would be, that the forbearance should be for a reasonable time; and we think, that the most rational inference from the testimony in question, is the one which appears to have been drawn by the judge below, that no fixed time was ultimately agreed on, during which the plaintiff should indulge the makers of the note; but that the understanding was, that it should be such as would be reasonable, under all the circumstances of the case.

The trustee has provided no basis for the court to deviate from this authority. *See In re Slodov*, 419 F.Supp. 64, 67 (N.D.Ohio 1976) (The majority view is that "a creditor's promise to forbear for an indefinite time which can be construed as calling for some reasonable period of forbearance is a good consideration for a guaranty of a debt.").

## B.

### *Lack of Authority*

■ The Limited Partnership Agreement of the debtor named Caldrello the sole general partner with full authority to hire attorneys and to execute all conveyances. The trustee, however, contends that Caldrello had no explicit authority to cause the debtor to guarantee debts of other companies. Trustee Memorandum at 5. This argument fails. The trustee's witnesses did not dispute that it was customary for the various Caldrello entities to guarantee debts of each other. On one occasion in 1988, the debtor executed a secured guarantee in the amount of $5.1 million to Transamerica Commercial Finance Corp. covering obligations of T.N.M. Lathrop, Inc. and Caldrello Motor Group, Inc. Not only did the debtor have ownership interests in many of the automobile dealerships, they were rent-paying tenants of the debtor's property and the debtor's source of monies to pay its mortgage and other obligations. The authorities are generally in accord that it is not outside the scope of a partnership business to guarantee debts of another when "the nature of the partnership business and the circumstances of the guarantee may be such that ... the partnership has a business interest in the person guaranteed or may otherwise benefit from the guarantee." Alan R. Bromberg & Larry E. Ribstein, *Bromberg & Ribstein on Partnerships* § 4.03(b)(1) (1988) (citing cases). *See also In re Monetary Group*, 95 B.R. 803, 807–08 (Bankr.M.D.Fla.1989); *Twelve Oaks, Ltd. v. Florida National Bank (In re Twelve Oaks, Ltd.)*, 59 B.R. 736, 739 (Bankr.M.D.Fla.1986). I conclude that the guarantee and the mortgage executed by Caldrello were authorized transactions.

## C.

### *Avoidable Transaction Between Lawyer and Client*

■ The trustee's final contention is that because P & F did not advise the debtor to retain separate counsel for the mortgage transaction between P & F and the debtor, the mortgage is unenforceable. Trustee Memorandum at 27.

For this proposition, the trustee, *inter alia*, cites *DiFrancesco v. Goldman*, 127 Conn. 387, 16 A.2d 828 (1941). *DiFrancesco* contains the following discussion:

Contracts between attorney and client fall naturally into at least two categories: (1) those made before the relationship of attorney and client has commenced or after the relationship has terminated; and (2) those made during the relationship. The agreement between the plaintiff and the defendant, whatever it was, was made during the existence of the

relationship. Courts of equity scrutinize transactions made between attorney and client during the existence of the relationship with great care, and if there are doubts, they will be resolved in favor of the client. Nevertheless, an attorney is not prohibited from contracting with his client respecting his fees, and a contract thus made after the commencement of the relationship of an attorney and client is not per se void but will by reason of the confidential nature of the relationship be closely scrutinized by the court. 127 Conn. at 392–93, 16 A.2d at 830–31 (citations omitted).

Having carefully reviewed the entire record made in this proceeding, the court concludes that the transaction between the debtor and P & F was fair and conscionable, without disadvantage to the debtor who was fully informed of the nature and effect of the transaction, and that P & F engaged in no unethical conduct.

IV.

CONCLUSION

The motion filed by Pavetti and Freeman requesting relief from stay in order to exercise its rights as a mortgagee on properties known as 83 Huntington Street and 42 Meridian Street, New London, Connecticut in which the debtor has an interest is granted.